## DAVENPORT v. LATIMER.

1. REAL ESTATE—SPECIFIC PERFORMANCE—EQUITY—VENDOR AND VENDEE—REMEDY.—The heirs at law of a deceased vendee may maintain an action in equity to compel specific performance of a contract for sale of land.

2. EQUITY—REMEDIES—SPECIFIC PERFORMANCE.—DAMAGES for breach of contract may be coupled with action in equity for specific performance.

3. SPECIFIC PERFORMANCE—PLEADINGS.—COMPLAINT states facts sufficient to entitle plaintiffs to specific performance.

4. FINDINGS OF FACT by Circuit Court both affirmed and reversed.

5. REMEDIES—SPECIFIC PERFORMANCE.—Principles governing specific performance stated.

6. IBID.—IBID.—VENDOR AND VENDEE.—In action for specific performance Court cannot require vendor to remove incumbrance, which both parties are contesting as condition precedent to payment of contract price.

7. NOTICE—VENDOR AND VENDEE—SPECIFIC PERFORMANCE.—Vendee cannot refuse to comply with contract of purchase on account of defect in title of which he had notice at time of purchase.

8. REMEDIES—SPECIFIC PERFORMANCE—VENDOR AND VENDEE.—EQUITY will not require specific performance of vendor after he has parted with legal title.

9. LACHES—REAL ESTATE.—Plaintiffs are guilty of laches in tardiness in complying with terms of contract of purchase of land.

Before BUCHANAN, J., Greenville, December, 1897. Reversed.

Action for specific performance of contract for sale of land by heirs of Irvine Davenport *v.* J. P. Latimer and Alfred Johnson.

From decree for plaintiffs, defendants appeal.

*Mr. Jos. A. McCullough,* for appellants, cites: *Complaint must allege compliance or offer to comply:* 1 McC. Eq., 38; 3 S. C., 50; 21 S. C., 124. *Incumbrance of which vendee had notice at time of purchase, no excuse for non-compliance:* 1 DeS. Eq., 399. *Vendee has waived defect of incumbrance:* Rich. Eq., 432; 3 Strob. Eq., 16; 2 Rich. Eq., 334. *Vendor having parted with legal title, cannot perform:* Bail. Eq., 371. *Vendee abandoned contract:* 1 S. C., 273.

*Messrs. Blythe & Blythe,* contra. Oral argument.

Nov. 24, 1898. The opinion of the Court was delivered by

MR. JUSTICE JONES. This is an action by the heirs at law of the vendee against the vendor and his subsequent grantee, for the specific performance of a contract to sell land. The contract is as follows: "That the said J. P. Latimer agrees to put the said Irvine Davenport, on January

1st, 1891, in possession of that tract of land, situated in Oak Lawn Township, Greenville, S. C., adjoining lands of Amanda Davenport, W. P. Culberson, Geo. Terry, and others, and containing twenty-six acres, more or less, and to convey said land to said Davenport by a good warranty deed, dower of my wife to be renounced, on his paying me $100 on January 1st, 1892, $100 January 1st, 1893, $100 on January 1st, 1894, with interest on the whole from January 1st, next, at the rate of eight per cent. per annum, the interest to be paid or computed annually at said rate as aforesaid. The said Irvine Davenport agrees to take possession of said land on January 1st, next, or make the payments as above specified, with the interest as aforesaid; and further agrees that in default of paying either principal or interest, that the whole sum agreed to be paid shall immediately become due; that said Davenport further agrees that in default of payment of principal or interest as aforesaid for the space of thirty days, to give possession of said premises to the said J. P. Latimer. In witness whereof, we have hereunto set our hands and seals, this 19th day of November, A. D. 1890. (Signed) J. P. Latimer (L. S.), Irvine Davenport (L. S.). Attest: W. P. Turner, M. G. Batson." Under this agreement, Irvine Davenport went into possession of the premises. On December 18, 1891, he paid $100, the first instalment. On April 14th, 1893, he paid $105, for which Latimer gave him a receipt, containing also these words: "Upon the payment of the balance of the purchase money with interest at maturity, I bind myself, my heirs and assigns, to execute or cause to be executed to said Irvine Davenport or his order, valid and good title to said tract of land," describing it. This payment was the last payment made or tendered on said contract. On the 16th day of January, 1894, Latimer wrote a letter to C. J. Davenport, a son of Irvine Davenport, then living in Texas, in which he stated, "I am ready to make the deed to you for your mother for the land, twenty-six and one-half acres, at any time you will forward the balance of purchase money * * *. Send

the money to any one here you may wish * * * and I will execute a proper deed guaranteed and copper-fastened, to be made to you for this land." On the 13th day of April, 1894, Richard Lenhardt brought an action against Thos. Moore and Irvine Davenport, to which action, by subsequent amendment, J. P. Latimer was also made a party defendant, for the foreclosure of a mortgage alleged to have been given by Thos. Moore on the 8th day of December, 1887, to Dill & Flemming on the land in question, to secure a note for $238 by Moore to Dill & Flemming on same day. Latimer had acquired this land by sheriff's deed under execution sale against said Moore. The amount alleged to be due on said mortgage in the complaint was $183.96, with interest from December 8th, 1888, at the rate of ten per cent. per annum. Irvine Davenport and J. P. Latimer both answered—the former on May 22d, 1894, denying generally the allegations of the complaint, and specifically the allegations as to the amount claimed to be due on said mortgage. That action has never been tried, and is now pending in the Court of Common Pleas for Greenville County. On the 13th day of June, 1895, Irvine Davenport died intestate, leaving the plaintiffs in this action as his only heirs at law. Some time in the fall of 1895, J. P. Latimer took possession of the premises and received the rents thereof for the year 1895. There was no evidence to sustain the finding by the master, concurred in by the Circuit Court, that J. P. Latimer received the rents and profits of said land for the years 1896 and 1897. According to Dr. Latimer's testimony, which was not contradicted in any way, he received only the rent for the year 1895. Nor was there any evidence to sustain the finding of the master, concurred in by the Circuit Court, as follows: "The rent has been received by the defendant, Latimer, from 1895–6, and as he is now (July 14, 1897, date of filing the master's report,) in possession, it is presumed that he will receive the rent for the present year." The master found the amount due on the contract for sale of land, calculated up to January 1st, 1898, to be $160.85; that

the rental value of the land was $24 per year; and, there-
fore, deducting the rents for 1895, 1896, and 1897, which
he found that J. P. Latimer received, he found the net
balance due on the contract to be $88.81.   The facts found
and reported by the master, substantially as stated above, is
supported by the evidence, except in the particulars named,
and except as will be hereafter noticed.   The master's con-
clusions of law thereon were: (1) That plaintiffs are entitled
to specific performance of said contract on payment of said
sum of $88.85.   (2) That the suit pending for foreclosure
is a cloud upon the title, and this fact was sufficient to
justify Irvine Davenport in his lifetime, and the plaintiffs
since his death, in their refusal to make any further pay-
ment upon the contract till that claim is removed.   (3)
That defendant, Latimer, is liable to have judgment ren-
dered against him, requiring him to remove the cloud upon
the title, and to execute and deliver to plaintiffs a good and
sufficient conveyance of said premises, with renunciation of
his wife's dower, upon payment of the sum of $88.85.   (4)
That upon failure of defendant to remove the cloud upon
the title and execute said conveyance, plaintiffs are entitled
to have judgment against him for the sum of $205, with
interest from January 1st, 1895, as the date of eviction.   (5)
That should plaintiffs fail to pay the $88.85 on a day certain,
upon the removal of the cloud upon the title, then defend-
ant, Latimer, is entitled to a judgment for the sale of the
premises to provide for the payment of the said sum of
money, any balance, if any, in case of such sale, to be dis-
tributed among plaintiffs according to their rights.

The Circuit Court overruled all the exceptions of defend-
ants to the master's report, and confirmed said report, and
decreed that J. P. Latimer remove the cloud from the title
by paying off or satisfying the said mortgage within thirty
days from the date of the decree; that upon the satisfaction
of said mortgage, plaintiffs, within thirty days thereafter,
pay defendant, Latimer, the said $88.85, balance due on
said contract; that upon said payment, the defendant, Lati-

mer, within thirty days thereafter, execute and deliver to
plaintiffs a good and sufficient conveyance of the premises
described in the complaint, with renunciation of his wife's
dower therein; that should defendant, Latimer, fail to re-
move the cloud upon the title to said land, the plaintiffs
have leave to enter up judgment against him for the said
sum of $205, with interest from January 1st, 1895, and the
costs of this action, and to enforce the collection of the
same by execution; that should defendant, Latimer, remove
the cloud upon the title, and plaintiffs fail to pay to him
the said sum of $88.85 within the time indicated, then the
master shall sell said land at public auction, and dispose of
the proceeds as provided for in his report; that the decree
is without prejudice to the rights of defendant, Lenhardt,
on account of the said mortgage set up in his answer herein.
The defendants, Latimer and Johnson, appeal, on a number
of exceptions set out in the record.

We will consider the case first from the standpoint of the
vendor, Latimer, as if no question is involved concerning
the rights of the defendant, Johnson, who claims as grantee
of Latimer without notice of the alleged equity of the plain-
tiffs.

I. As to the demurrer interposed by defendant, Latimer,
that the complaint did not state facts sufficient to constitute
a cause of action. The record shows that the de-
murrer was to be heard after the testimony was taken.
No specifications were filed with the demurrer, and
it seems that neither the master nor the Circuit Court has
specifically ruled thereon. Perhaps the hearing of the case
on its merits may be treated as an overruling of the demur-
rer. The demurrer was not well taken on the grounds
specified in the exception. In overruling the same, we
may briefly say: (1) That plaintiffs, as heirs at law of Ir-
vine Davenport, deceased, have the right to bring this
action, as, under the theory of the complaint, the equitable
title in the premises alleged to have belonged to Irvine Da-
venport, on his death, intestate, descended to his heirs at

law, and so, whatever right he had to require specific performance from the holder of the legal title, descended to his heirs at law. (2) The complaint is not demurrable as alleging a cause of action for damages only, which should be tried on the law side of the Court. The primary right set up in the complaint is equitable, and the claim for damages is incidental to and intimately connected with the equitable right claimed; therefore, while it may be that a court of law could have rendered relief in damages, still the court of equity, having exclusive jurisdiction of the equitable primary right and concurrent jurisdiction with the court of law as to the incidental and alternative right to damages or compensation, is competent to administer full relief according to the ultimate rights of the parties. *Hammond* v. *Foreman*, 48 S. C., 175. (3) The complaint states facts which, if true, would entitle plaintiffs to a specific performance of the agreement alleged, or, if specific performance were impossible, to compensation for breach. After setting out the relation of plaintiffs to the vendee, the contract between vendor and vendee, and the payment by the vendee in part performance, the complaint alleged: VI. That the said J. P. Latimer, at the time said contract purchase was made, and at all times thereafter up to the time of the last payment, assured the said Irvine Davenport that there were no incumbrances on said land, and that the title thereto was clear; but about that time he discovered that there was an outstanding mortgage covering this land, which is recorded in the register of mesne conveyance office for said county, and remains unsatisfied of record, and the holder thereof, the defendant, Richard Lenhardt, claims that the same is unpaid, and brought suit to foreclose the same in the lifetime of the said Irvine Davenport, to which he made him and the said J. P. Latimer parties defendant. VII. That when the said last payment became due, on account of the facts above set forth, the said Irvine Davenport demanded of the said Latimer that he satisfy said mortgage, and ten-

der him a deed to the land free of incumbrances; but the said Latimer refused to do so. Pending the controversy on this po'nt, the said Irvine Davenport died. VIII. That after the death of the said Irvine Davenport, the plaintiffs, as his heirs at law, offered to carry out said contract of purchase and pay to the said Latimer the balance due thereon; but the said Latimer refused to receive the money, or to make them a deed thereto, claiming that the failure to pay the balance promptly when due was a forfeiture of the contract on the part of the said Irvine Davenport; that the rights of himself and his heirs were forfeited thereby; that said contract was now null and void; that all his rights as fee simple owner were restored, and that he is now entitled to the possession thereof. XI. That these plaintiffs are now, as the heirs at law of the said Irvine Davenport, ready to comply with said contract, and ask to be allowed to pay the balance of the purchase money into Court.

II. As to the findings of fact and failure to find facts by the Circuit Judge concurring with the master. 1. There was error in finding that J. P. Latimer received the rents of the premises for the year 1896, and would receive the same for the year 1897. As stated above, the evidence only warranted a finding that J. P. Latimer received the rents for the year 1895. Hence the amount found to be due on the contract should only be reduced by the rents for the year 1895. 2. There was error in finding that J. P. Latimer was in possession of the premises after 1895. The case does not, as it ought to do, show when this action was commenced. The record before us dates the summons January 14th, 1895. This is, probably, January 14th, 1896, as the complaint alleges the death of Irvine Davenport in June, 1895, and as the reference was in November, 1896. The complaint also alleged that defendant, Latimer, had attempted to sell the land to defendant, Johnson, and had put Johnson in possession. The answer of defendant, Latimer, admitted that, subsequently to the death of Irvine Davenport and before the commencement of the action, he did sell

to his codefendant, Johnson, the tract of land in dispute,
and put him in possession thereof.  The testimony shows
that J. P. Latimer took possession of the land some time
after July 25th, 1895, and that on the 14th day of Novem-
ber, 1895, when one of the plaintiffs, W. V. Davenport,
called to see J. P. Latimer in reference to the land, Latimer
told Davenport he had sold the land to Alfred Johnson.  3.
There was error in failing to find that Irvine Davenport
knew of the mortgage alleged to be a cloud upon his title,
at the time of the execution of the agreement to sell the
land.  W. P. Turner, a witness to the agreement, testified
that "the matter of the Lenhardt mortgage was discussed
before the paper was executed; that Dr. Latimer told Mr.
Davenport that he would stand between him and all damage
on account of this mortgage, which Mr. McKelvey held at
that time.  After that suit was brought, I heard Davenport
say that Dr. Latimer was to assume that mortgage, and that
he, Davenport, was to testify as a witness in the case * * *
At the time Mr. Davenport was sued on the mortgage, I
heard him say that they had got the thing wrong; that he
had nothing to do with it.  He had the papers, and said he
was going to take the papers to Dr. Latimer.  He said the
doctor was to stand between him and all danger.  He had
the doctor's bond for title, and it was as good as gold."
There was no testimony conflicting with this.  4. There
was absolutely no testimony whatever to sustain the alle-
gations of the complaint, as contained in the sixth, seventh,
and eighth paragraphs thereof, as quoted above.  5. There
was no testimony whatever tending to show any tender or
offer to pay the balance due on the contract by either Irvine
Davenport in his lifetime, or by any of the plaintiffs after
his death.  On the contrary, the evidence shows that Dr.
Latimer stood ready and willing to execute the deed in ac-
cordance with the agreement, certainly as late as July 25th,
1895, when he said to one of the plaintiffs that if any of
them would pay the balance due on the land "right away,"
as W. V. Davenport testified, "promptly," as Dr. Latimer

testified, he would execute it. Nothing further was done until in November, 1895, when W. C. Crompton, for W. V. Davenport, went to Dr. Latimer to ascertain the amount he held against the place, at which time Dr. Latimer said he had sold the place and would have nothing further to do with it. But it appears that, even after this, some time late in November, 1895, when W. V. Davenport met Dr. Latimer, and the subject was again discussed, Dr. Latimer told Davenport, that if Johnson would give up the land, and the parties would comply with the contract, he would make title. 6. There was nothing in the testimony to show that either Irvine Davenport in his lifetime, or his heirs at law after his death, failed to pay or tender the balance due for the purchase of the land, because of the existence of the Lenhardt mortgage. The testimony does not disclose why the vendee, in his lifetime, did not comply, nor why his heirs at law did not comply, or offer to comply, within a reasonable time after Dr. Latimer notified W. V. Davenport, one of the heirs, that he would make the deed, provided they promptly paid the balance due.

III. Applying the principles of equity to the facts in this case. Specific performance is not a matter of absolute right, but rests in the sound judicial discretion of the Court, guided by established principles. Generally a vendee cannot maintain an action against a vendor for specific performance of a contract to sell land, unless he shows that he has complied, or offered to comply, with the contract on his part, and was refused by the vendor. But, since equity leans to compensation in preference to forfeiture, the vendee, if he cannot show exact compliance with the contract on his part, may still have specific performance or compensation, provided he is not guilty of laches in the assertion of his claim, stands ready and willing to comply, and shows reasons satisfactory to the Court in excuse of his failure to comply. Plaintiffs have not brought themselves within this principle, for, as stated, they have not complied, or offered to comply, and have shown no rea-

son in excuse of their default, even if it be conceded that an action brought two years after default on the contract is not laches under the circumstances of this case.

But it may be argued that the existence of the Lenhardt mortgage was sufficient to justify the failure to pay the balance of the purchase money, the amount claimed on the mortgage being in excess of the balance due on the purchase money, and probably equal to the value of the land. This, if there were no obstacle in the way, might have justified the Court in decreeing for a deposit of the balance of purchase money, and a deed of the premises, with adequate security against the result of the pending suit on the mortgage. But the Court, pending the suit on the mortgage, which both vendor and vendee were contesting, could not require the vendor to pay off or satisfy the contested mortgage within thirty days from the decree, as a condition precedent to the payment of the balance due by the vendee. Further, the vendee knew of the Lenhardt mortgage when he contracted to purchase the land. The payments made by him were made with this knowledge. The evidence shows that he was relying for his protection against the mortgage upon the covenants of warranty by the vendor. He could not, therefore, refuse to comply with his contract because of the contested mortgage, of which he had notice before contracting. This principle was recognized in *City of Charleston* v. *Blohme*, 15 S. C., 124, where the Court said: "If, however, the purchaser, at the time of the sale, knows of the defects in the title, or has means of knowing of them, and fails to avail himself of such means, he cannot afterwards refuse to comply upon the ground of such defect." The vendee having contracted with his eyes open to the knowledge of the incumbrance, if the warranty deed of the vendor is insufficient to protect him, must suffer the consequence of his own negligence.

Then equity will not decree specific performance against the vendor when performance is impossible. The evidence

shows that after waiting a reasonable time after July 25, 1895, for the heirs of the vendee to comply, he sold the land to his codefendant, Johnson. The legal title not being in defendant, Latimer, at the time of the decree, it is impossible for him to comply. It is true, if his inability to comply is the result of his own fault, equity, as well as law, on a proper case, would make him render compensation. Further, the decree of the Circuit Court wholly ignores the rights of the defendant, Johnson. The vendee cannot have specific performance against the grantee of the vendor unless the vendor is himself liable, and unless the grantee takes with notice of the vendee's equity. In this case, the vendor was in possession of the premisés when he sold to Johnson and put him in possession. There is no suggestion of any fraud or collusion between Latimer and Johnson, and no evidence tending to show that Johnson had any notice of plaintiff's equity. If it be so that, being privy in estate with Latimer, Johnson is affected with the notice or knowledge of Latimer, then he had a right to infer from the possession of the land by Latimer, and the failure of the heirs of Davenport to comply within a reasonable time after July 25, 1895, that the heirs had abandoned their equity to compel specific performance. In the case of *Door* v. *Gibbes*, Bailey Eq., 371, the Court held that "specific performance of an agreement to sell land will not be enforced against the vendor, where the vendee has neglected to comply with conditions stipulated by the agreement within the time limited by it, and the vendor has in consequence sold and conveyed to another purchaser." That case also decides another well established principle, viz: that "time is not usually of the essence of a contract for the sale of lands; but it may become so, if the delay is injurious, and especially where a period is fixed within which a condition is to be performed in order to complete the contract." We think the evidence in this case would warrant the conclusion that the vendor waived the strict performance of the contract as to time, by consenting, July 25th, 1895,

to make the deed, provided the heirs of the vendee complied promptly. This would give them a reasonable time after that date in which to comply. As they had nothing to do but pay the money, it was unreasonable to wait until the middle of November before attempting to ascertain the amount claimed to be due. Plaintiffs did not express their willingness to comply until the filing of the complaint, at which time they knew another purchaser was in possession.

We are, therefore, of the opinion that the decree of the Circuit Court must be reversed, and that the case be remanded to the Circuit Court for such further proceedings as may be proper or necessary in accordance with the views herein announced.