8118

WILLIAMS v. McMANUS.

REAL PROPERTY—MORTGAGES—RESALE.—Where land is conveyed by an absolute deed and as part of the same transaction a contract of repurchase is given the grantor, he must strictly comply with the terms of the repurchase contract or forfeit his right to repurchase. Here the deed and bond of resale are held to be what on their face they appear to be and not to have been intended as a mortgage.

Before SHIPP, J., Lancaster, January, 1911. Affirmed.

Action by John Williams against R. C. McManus. Plaintiff appeals.

*Messrs. Dunlap & Dunlap,* for appellant, cite: *Parol evidence is competent to show deed was intended as a mortgage:* 45 S. C. 614; 21 S. C. 398; 55 S. C. 51; 53 S. C.

547; 37 S. C. 489. *Court will scrutinize transactions between mortgagor and mortgagee:* 21 S. C. 398; 3 Pom. Eq., sec. 1195; 55 S. C. 51; 53 S. C. 549; 43 S. C. 489; 82 S. C. 173; 37 S. C. 489; 15 S. C. 72; 41 S. C. 168; 14 S. C. 152; 21 S. C. 400; 24 S. C. 1; 28 S. C. 364. *Tender:* 26 S. C. 337; 16 S. C. 427. *Meaning of "term is the essence of the contract."* Pom. on Con. 51.

*Messrs. Williams & Williams,* contra, cite: *Bringing out same evidence on cross-examination cures error in direct examination:* 87 S. C. 417; 85 S. C. 90. *Tender too late:* 53 S. C. 563. *Evidence necessary to show deed is a mortgage:* 3 Pom. Eq. Jur., secs. 1195, 1196; Rich. Eq. 153; 52 S. C. 54; 55 S. C. 70; 61 S. C. 579; 82 S. C. 557. *Effect of time the essence of a contract:* 48 S. E. 352; Bail. Eq. 371; 50 S. C. 402. *Vendee guilty of laches cannot maintain action for specific performance:* 53 S. C. 572.

March 2, 1912. The opinion of the Court was delivered by

MR. JUSTICE WATTS. On September 6, 1906, John Williams was the owner of a certain tract of land in the town of Lancaster, and on that day made a deed to R. C. McManus for the property and McManus cotemporaneously made a bond for title for the said property due and payable September 1, 1907, for $174.00, and on September 1, 1908, for $174.00. That John Williams failed to pay the amount due September 1, 1907, and under ejectment proceedings June 5, 1908, issued out of magistrate's court, he was ejected from said property and since said time McManus has been in possession.

On May 22, 1909, this action was commenced by Williams to declare the said deed a mortgage and to require McManus to make a deed for the property upon the payment of the amount due. After issue joined, the matter

was referred to John T. Green, Esq., who filed his report containing his conclusions of law and fact and sustaining the contentions of defendant, and holding that the deed was intended as written. To this report plaintiff excepted, questioning pretty much all of his findings both as to law and facts.

Judge Shipp heard the case upon these exceptions and made a decree sustaining the referee, Mr. Green, and in his decree says: "I have carefully read the evidence offered in this case and the report of the referee. The referee carefully took all the evidence and made an able report on the facts and the law of the case. I fully concur with the referee in both his conclusions of fact and law, and accordingly, the exceptions are overruled."

Plaintiff appeals from this decree and questions his Honor's decision and all his findings both as to law and fact. The report of the referee should be reported in this case. He finds as a fact that on numerous occasions prior to the date of execution of deed and bond for title, the plaintiff wished to borrow money from the defendant on lot in question. Defendant would not make the loan on the lot, but offered to buy if plaintiff would sell. That when papers were executed one Massey held a mortgage on the lot in question for $200.00, which plaintiff was unable to pay. That the plaintiff was a colored man of more than ordinary intelligence. That he could read and write and no advantage was taken of him in the execution of the papers. That the deed and bond were executed at the same time, and before the same witnesses. That the plaintiff remained in possession of the premises after execution of papers until he was ejected by legal proceedings, under warrant of ejection, issued by two magistrates, under sec. 2421 of the Code of Laws, on June 22, 1908. That since deed of conveyance McManus paid taxes on the premises. That no money was paid or tendered to McManus on bond for title up to the time of ejectment. That on April 10,

1909, Mr. Dunlap, as attorney for plaintiff, made a tender to defendant for $364.98 and demanded that he execute a deed for lot in question, claiming that the amount tendered was "in payment of the mortgage held by him from John Williams," and that McManus refused the same. He finds from all the facts and testimony in the cause taken by him, and from his knowledge of the character of the witnesses examined, that the deed of conveyance was a deed and not intended as a mortgage, and that there was a contract to resell to Williams within a stipulated time and upon conditions therein fully expressed. That the price of $300.00, the sum paid to Williams for lot, was the full value of the lot at the time of sale. In the bond for title we find this: "And it is expressly agreed by and between the parties aforesaid that, time is the essence of this contract, and that in the event of nonpayment of the said sum of money or any part thereof promptly at the time herein limited that then the said R. C. McManus is absolutely discharged from any and all liability to make and execute such deed, and may treat the said John Williams as tenant holding over after the termination or contrary to the terms of his lease, or if he prefer so to do he may enforce payment of the purchase money." It will be borne in mind that we have findings of fact by referee concurred in by the trial Judge.

Was the deed of conveyance from Williams to McManus a mortgage or absolute sale? For while it is undoubtedly true that a deed which appears on its face to be an absolute conveyance may in equity be declared a mortgage if the evidence be sufficient to show that such was the intention of the parties, yet it is equally true that the presumption is that the deed is what on its face it purports to be, an absolute conveyance, and to establish its character as a mortgage, the evidence must be clear, unequivocal and convincing, for otherwise the natural presumption will prevail. 3 Pom. Eq. Jur., sec. 1196; *Arnold* v. *Mathison,* Rich. Eq. 153; *Petty* v. *Petty,* 52 S. C., page 54, 20 S. E. 406.

"Whether any particular transaction amounts to a mortgage or absolute sale, with an agreement allowing the vendor to repurchase the lands at a special price and within a time limited, must to a large extent depend upon its own special circumstances, for the question finally turns in all cases upon the real intention of the parties as shown upon the face of the writings or disclosed by the extrinsic evidence." 3 Pom. Eq., sec. 1195; *Brown* v. *Bank,* 55 S. C., page 70, 32 S. E. 816. The evidence in this case satisfies me that the minds of Williams and McManus met, and they fully understood each other when the papers were executed herein. McManus would not loan Williams any money on mortgage, but purchased the land at a fair and adequate price, and in no manner overreached Williams and the real intention of the parties, as disclosed by the evidence was that it was an absolute deed. At the same time it was the intention of the parties if Williams could comply with the terms and conditions of the bond for title, and promptly meet the payments therein provided for, McManus was to reconvey the property to him. Williams understood that he was selling to McManus, and that if he did not promptly meet the payments, as provided for, that his right to have the lot reconveyed to him would be defeated. It is "so nominated in the bond," because the agreement was that "time is the essence of this contract," and upon the nonpayment of the said sum of money, or any part thereof, promptly at the time herein limited, that McManus is absolutely discharged from any and all liability to make and execute such deed and could treat Williams as a tenant holding over. Williams was neither a lunatic nor a fool, but on the contrary, was of ordinary intelligence, and there is some proof that he consulted a competent attorney. If it was intended as a mortgage by McManus we are bound to conclude that he did not act as a good business man, in that he made no provision to reimburse himself for any necessary expenses that he might be

put to in the enforcement of his legal rights. The Courts are to enforce contracts as they are made, and not to relieve parties who become dissatisfied or think they have made a poor trade. Ejectment proceedings were instituted on June 5, 1908, by McManus, under sec. 2421 of the Code, to eject Williams from the premises, and on that day a summons and a complaint was duly served on him. The complaint was verified, and the copy of bond for title was served also. In these proceedings McManus specifically claimed title to the premises. Williams failed to answer or appear in person or by attorney on the day set for the hearing. The case was heard and submitted to a jury, properly empaneled, and the jury found for McManus and Williams was ejected from the premises under a warrant of the Court. This is a circumstance going to show that Williams knew that by his noncompliance with the terms and conditions of the payments, as provided for in the bond for title, that he had forfeited his claims thereunder, and submitted to the ejectment.

He was ejected on June 22, 1908, and on May 22, 1909, eleven months from that time, he commenced this suit, having on April 10, 1909, through his attorney, Dunlap, made a tender to McManus of the sum of $364.98, with a demand that he execute to him a deed of conveyance, claiming that the sum tendered was "in payment of the mortgage held by him from John Williams." So it is seen that nearly ten months after the ejectment is the first time that we hear of any contention on the part of Williams that the deed, absolute on its face, was a mortgage. Property might have gone up in value in that time. The evidence shows that while Williams remained in possession, McManus paid the taxes. Where "time is made the essence of the contract," the parties are bound by the time limited in the contract, and the vendee forfeits his rights by a failure to comply within the specified time. *Dover* v. *Gibbs,* Bailey's Eq. 371. In this case it was agreed that "time is

the essence of this contract," and the plaintiff failed to pay taxes as they became due and failed to meet the first payment due, September 1, 1907, as he had obligated himself to do. Then he forfeited all rights he had under the contract to recover. In the case of *Davenport* v. *Latimer,* 53 S. C., page 572, 31 S. E. 630, Justice Jones says: "Generally a vendee cannot maintain an action against vendor for specific performance of a contract to sell land, unless he shows that he complied with, or offered to comply with, the contract on his part and was refused by the vendor. But since equity leans to compensation, in preference to forfeiture, the vendee if he cannot show exact compliance with the contract on his part, may still have a specific performance or compensation, provided he is not guilty of laches in the assertion of his claim and stands ready and willing to comply, and shows reason satisfactory to the Court in excuse of his failure to comply." The plaintiff in this case has not brought himself within this principle, for he went into a contract with his eyes open. He knew what he was doing. He obligated himself to pay taxes on the land he was to pay $174.00 for on September 1, 1907, and the same amount on September 1, 1908. He knew that "time was the essence of the contract," and yet he failed to pay taxes and the $174.00 due September 1, 1907, and made no effort to do so, and when served with ejectment proceeding papers on June 5, 1908, he did not pay or attempt to pay it. On April 10, 1909, he tendered the amount through his attorney and demanded deed and commenced this action May 22, 1909. All of this shows there was no excuse for his default, and from all the evidence in the case, we conclude that the natural, logical and proper conclusion is that he was at fault, and whatever rights he had on the bond for title he forfeited by failure to comply with the conditions he had obligated himself to perform.

The judgment of the Circuit Court is affirmed.

MR. JUSTICE FRASER.  *I concur in the result.*

The transaction here originated in an application for a loan.  There was a contract to convey and reconvey as a part of the same transaction.

The law, as I understand it, is well stated in Pomeroy's Eq. Jurisp., vol. III, page 171, sec. 1194:

"Where land is conveyed by an absolute deed and an instrument is given back as a part of the same transaction, not containing the conditions ordinarily inserted in mortgages, but being an agreement that the grantee will reconvey the premises if the grantor shall pay a certain sum of money at or before a special time, the two taken together may be what on their face they purport to be—a mere sale with a contract of repurchase, or they may constitute a mortgage.  In the first case, where the transaction is merely a sale and contract of repurchase, the agreement must be fulfilled according to its terms.  If the grantor fails to pay the money at the stipulated time all his rights, either at law or in equity, under the contract are gone; there is no equity of redemption.  In the second case, if the transaction be a mortgage, all the qualities and incidents of a mortgage attach, whatever be its external form, and whatever be the collateral stipulations.  The maxim, once a mortgage, always a mortgage, applies to this condition with especial emphasis."

It is sometimes a very nice question as to whether a contract to convey and a contract to reconvey, executed at the same time, is to be taken as an absolute conveyance, with a mere right to repurchase, or whether the two papers together constitute a mortgage.  If Williams, from the first, had claimed that this transaction amounted to a mortgage, he may have had a cause which this Court could have sustained.  He did not speak when he ought to have spoken, permitted himself to be turned out of possession and for eight months laid no claim to the place, and it seems to me that whatever doubts the Court may have had, are solved

32—90

against him. Courts ought to construe contracts between parties to be what on their face they purported to be, and if otherwise, clear and convincing proof according to the strict rules of law must be furnished to show that they are not.

It seems to me that Williams' conduct is inconsistent with the position of a mortgagor, and for this reason, I concur in the result.