8832

DINKINS v. SIMONS *ET AL.*

(81 S. E. 638.)

APPEAL AND ERROR.   PRACTICE.

1. Where the Court entered two decrees at different times, but the first decree merely adjudicated the rights of the parties and directed the submission of a formal decree, and the Court retained jurisdiction until such submission, a notice of intention to appeal, served within ten days of notice of filing of the formal decree, was in time, though more than ten days elapsed between the entry of the first decree and the giving of the notice.

2. A judgment granting specific performance of an option contract to purchase real estate, and directing a sale to pay the amount due the vendor, affirmed by an equally divided Court.

3. Testimony of party as to transaction between his father and adverse deceased party admissible to show absolute deed a mortgage.

4. An option must be exercised to affect contract.

5. Objections to complaint not raised by demurrer are waived.

6. In action for specific performance by either vendor or vendee the Court may in its discretion order a sale of property to protect substantial rights of parties.

Before GAGE, J., Columbia, November, 1912.    Affirmed.

Action by John D. Dinkins, as executor of A. H. Dinkins, deceased, against W. J. Simons, as committee of Robert J. Palmer, a lunatic, and others.   From a judgment for plaintiff, defendants appeal.

*Messrs. Clark & Clark,* for appellants, cite: *Dinkins never acquired equitable title:* 32 S. C. 57.   *The contract lacked the essentials of a mortgage:* 78 S. C. 181; 31 S. C. 280-281; 55 S. C. 70-71; 61 S. C. 579; 82 S. C. 558.   *Specific performance not of right:* 53 S. C. 572; 70 S. C. 351; 79 S. C. 143.   *Objection to testimony of interested party:* 47 S. C. 292; 28 S. C. 73; 64 S. C. 293; 89 S. C. 350. *Receipts insufficient to show alleged contract:* 27 S. C. 363; 13 Rich. 257.

*Messrs. Thomas & Lumpkin,* for respondents, cite: *Time within which to appeal:* 32 S. C. 317.   *Interest of plaintiff:*

19—97

30 A. & E. Enc. 617; 20 Enc. Pldg. & Prac. 428; 57 N. J. Eq. 257; 26 A. & E. Enc. 125; 53 S. C. 563. *Equitable mortgage:* 11 A. & E. Enc. 123; 4 Kent Com. 150. *Receipts:* 1 Rich. L. 33; 1 Strob. 61; 30 Cyc. 1226. *Costs:* 4 S. C. 70; 44 S. C. 378.

April 28, 1914.

The opinion of the Court was delivered by MR. CHIEF JUSTICE GARY.

This is an action in which the plaintiff seeks the aid of the Court, in the enforcement of an option to purchase a tract of land, under the following agreement:

"State of South Carolina, Richland County.

"This agreement, made this 7th day of February, A. D. 1903, by R. J. Palmer, of the first part, and Ainsley H. Dinkins, of the second part, both of the county and State aforesaid, witnesseth:

"That the party of the first part does hereby lease, demise and to farm let, to the party of the second part, that tract of land, * * * being the land this day sold and conveyed to R. J. Palmer, by the said Ainsley H. Dinkins. This lease to continue from year to year for the term of ten years' from this date, provided the rental hereinafter stipulated for is paid regularly, as herein stipulated; but failure to pay any installment of rent when due shall, at the option of the party of the first part, terminate, immediately on the exercise of such option, this said lease.

"The party of the second part hereby stipulates and covenants and agrees, to and with the party of the first part, his heirs, executors, administrators and assigns, to pay to the party of the first part, as rental for said lands above mentioned, the annual sum of one hundred dollars, said rental to be paid on or before December 1st, next, and on or before December 1st of each succeeding year, during the continuance of this lease.

"The party of the first part further covenants to and with the party of the second part to sell and convey to said party of second part the above mentioned and described tract of land at the price of twelve hundred ($1,200.00) dollars, upon payment to said party of first part of said purchase price, at any time during the continuance in force of this lease; and it is further stipulated by and between the parties hereto that the said Ainsley H. Dinkins, if he chooses to exercise the option to purchase said lands, may make payment to the said R. J. Palmer, from time to time, on his said contract in such sums as he sees fit; and that all payments made by said Dinkins in excess of the yearly rental above stipulated shall be credited on the purchase price above named, but that the yearly rental shall continue as above stipulated, until the purchase money is paid in full and conveyance made for said land, under the terms of foregoing contract.

"In testimony whereof the parties of the first part and second part have hereunto set their hands and seals, to duplicate copies of this contract, the day and year first above written.                          R. J. PALMER.       (Seal.)

                              "A. H. DINKINS.    (Seal.)

"(In third line from bottom of first page 'twelve' inserted in lieu of 'eleven' and figures '($1,200.00)' inserted before signing.)

"Signed, sealed, and delivered in presence of W. H. Collins, D. W. Robinson."

The complaint alleges: That in pursuance of said agreement, Ainsley H. Dinkins went into possession of said land and there remained until his death, on the 21st of April, 1911, leaving of force a last will and testament, wherein he appointed the plaintiff as his executor. That the testator devised and bequeathed all his property, including his rights under the said agreement, to his five children, parties defendant to this action, two of whom are adults, and three are infants of the respective ages of 13, 14, and 17 years.

That the plaintiff is informed and believes that Ainsley H. Dinkins did, from time to time, pay the annual rental, provided for in said agreement. That W. J. Simons was appointed the committee of Robert J. Palmer, who was adjudged a lunatic by the probate Court, on the 4th of February, 1908. The prayer of the complaint was "that the amount due upon the contract of purchase aforesaid be ascertained and determined, and, upon the payment of the same to W. J. Simons, as committee of Robert J. Palmer, that a deed of the said tract of land be executed to the children of Ainsley H. Dinkins, defendants herein. * * *"

The defendants did not set up any matter by way of defense, but merely denied that the plaintiff or his testator had complied with the requirements of the agreement, in regard to the exercise of the option to purchase the land.

There were two decrees. In the first decree his Honor, the Circuit Judge, said: "I think it manifest that the deed from Dinkins to Palmer constituted Palmer a mortgagee of the land. Under the contract, Dinkins has until the 7th of February, 1913, to redeem. * * * I conclude, therefore, that the land in issue must be sold; that out of the proceeds of sale the estate of Palmer must be paid, the balance due to it on rent, after it has been charged with the amount so found to have been paid, and the estate of Palmer must be paid the principal sum of $1,200 admitted by plaintiff to be due; and, if there be any balance, it shall be divided betwixt the heirs at law of Dinkins, or to the executor of his will, to be paid out according to law. I think the costs ought to be shared equally by the plaintiff and the estate of Palmer; one side is in no more fault than the other." The Circuit Judge filed another decree, in which he found that the balance due for rent on the 1st of December, 1912, was $582.35, which, together with the $1,200, aggregated $1,782.35.

There is a preliminary question to be determined before the merits are considered. Upon the hearing of this case

in the Supreme Court, a motion was made to dismiss the appeal, on the ground that the notice of intention to 1, 2 appeal was not served within ten days, after notice of the filing of the final decree was served on defendant's attorneys. The first of the decrees was filed on the 28th of January, 1913, and the other on the 25th of March, 1913. The notice of intention to appeal was served on the 28th of March, 1913. At the conclusion of the first decree are these words: "A formal decree may be prepared and submitted to me to sign, and I retain jurisdiction of the case to that end." The second decree commences with the following words: "This cause was heard by me at the November term of the Court of Common Pleas for Richland county. On January 27, 1913, I handed down a decree, in which I determined the rights of the parties, and stated the principles upon which those rights should be settled. I then gave leave for a formal decree to be prepared and submitted to me to sign, and I retained jurisdiction of the case to that end." Both decrees were rendered by his Honor, George W. Gage, at that time a Circuit Judge, but now an Associate Justice of the Supreme Court. It thus conclusively appears that the first decree was not intended to be final; that the Circuit Judge so adjudged; and there was no appeal from his decree in this respect. The motion to dismiss the appeal is therefore refused.

It seems that Ainsley H. Dinkins bought the land in question from W. G. Childs on the 15th of January, 1896, but was not able to pay the purchase money, which amounted to $1,100, at the time of the transaction between him and Robert J. Palmer.

Frederick Dinkins, one of the defendants, testified as follows: "Mr. Thomas: Did your father owe Mr. Childs any money on it? Witness: Yes, sir. Q. How much? A. $1,100. Q. Who did your father get to take up Mr. Childs' debt? A. He got Mr. Palmer. Mr. Clark: I object to any testimony bearing on any transaction or communication

between the witness' father and R. J. Palmer, on the grounds stated above. (Testimony taken subject to objection.) Mr. Thomas: Got Mr. Palmer to do what, pay who? Witness: Pay Mr. Childs. Q. Did he give Mr. Palmer a deed? A. Yes, sir. Q. Your father? A. Yes, sir. Mr. Clark: I object to that; the deed speaks for itself. Mr. Thomas: The deed is offered in evidence. Mr. Thomas: Did your father and his children, his family rather—did your father and his family remain in possession of the land after your father gave Palmer the deed? Witness: Yes, sir. Q. Had you lived there before that time? A. Yes, sir; we lived there when Mr. Childs— Q. First sold it to your father? A. Yes, sir. Mr. Clark: I object to that testimony; same grounds. Mr. Thomas: And your father was living there when he died? A. Yes, sir.

The appellant's attorneys interposed two objections to this testimony. The first ground of objection was that it was inadmissible under section 438 of the Code. It did not relate to a transaction between the witness and a person then deceased, and furthermore was not in his favor, but was against the interest of the witness. See cases cited in the notes to section 438 of the Code, on page 166, to which may be added the case of *Devereux* v. *McCrady,* 46 S. C. 133, 24 S. E. 77. The second ground of objection was that it tended to contradict the deed.

Parol testimony is admissible for the purpose of showing that an instrument of writing purporting to be an absolute deed, was intended as a mortgage. *Brownlee* v. *Martin,* 21 S. C. 392. This testimony, however, is immaterial, and need not be discussed.

The agreement hereinbefore mentioned shows upon its face: (1) That the parties intended to provide for a lease. (2) That Ainsley H. Dinkins was empowered to exercise the option to purchase the lands at any time during the continuance in force of the lease. (3) That failure on the part of Ainsley H. Dinkins to pay any installment of rent when

due should, at the option of Robert J. Palmer, terminate the lease immediately, on the exercise of such option.

Robert J. Palmer was powerless to exercise his option, unless there was a failure to pay the installments of rents when due, and even then it was necessary to give notice that he had elected to exercise his option, in order to terminate the lease. The mere failure of Dinkins to pay an installment of rent did not *ipso facto* have that effect. Furthermore, the right of Palmer to exercise his option to terminate the lease, upon the failure of Dinkins to pay the rent, was subject to waiver; and the following testimony shows that it was not the intention, either of Palmer or his committee, to terminate the lease.

W. J. Simons testified as follows, on cross-examination: "Q. Where is Palmer now? A. In the city of Columbia. Q. You are still handling his affairs for him? A. Yes, sir; I can state that prior to the time I took charge, when the old man was considered in good mind, he would get after Dinkins about the short payments he would make, and the old man reminded him of the contract. He reminded him more than once that he had violated it. Q. You then allowed him to stay on? A. Yes, sir; the old man said that Dinkins was so far behind with him that, in self-defense, he would have to help him, hoping to get his money. * * * Q. When you took possession of the property in question, you say you told the Dinkins boy to stay in charge until you gave him further orders? A. Yes, sir."

After the commencement of this action, the defendant, W. J. Simons, served a notice on the plaintiff, which, after reciting the provisions of the agreement and the fact that Dinkins had failed to pay the rent therein stipulated, concluded as follows: "Now, therefore, in pursuance of said covenant, hereinbefore set forth, I hereby give you notice to quit and deliver up to me immediately the premises hereinbefore described, now held by you as my tenant; and demand is hereby made for all installments of rent now due and

owing, together with interest accrued thereon, from the 7th day of February, 1903, to date. Dated this —— day of August, 1911. W. J. Simons, as committe of R. J. Palmer, a lunatic."

On the 21st of October, 1911, W. J. Simons executed the following receipt: "Columbia, S. C., October 21, 1911. Received of John D. Dinkins, executor of the estate of H. Dinkins, one hundred and no one hundredths dollars for rent of land of R. J. Palmer, on Garners Ferry road, for the year 1911. W. J. Simons, committee of R. J. Palmer, a lunatic."

There can be no doubt that Dinkins exercised the option to purchase, within the ten years and during the continuance of the lease, as this action (which showed that he intended to exercise such option) was commenced on the 3d of August, 1911.

There is not a particle of testimony tending to show that Dinkins was guilty of laches in exercising his option, as he had that right, under the contract, at any time within ten years and during the continuance of the lease, which was continued of force after there was a failure to pay rent, by acquiescence of Palmer and his committee. Laches cannot be imputed to a person who acts within the time prescribed by the terms of the contract. It would be in effect making a contract for the parties for the Court to hold that the right to exercise the option of purchasing the land by Dinkins was forfeited under these circumstances. It is contended that, this being an action for specific performance, the complaint should be dismissed, for the reason that it does not appear that the plaintiff is ready and willing to purchase the land. If the complaint was defective on the ground that it did not state facts sufficient to constitute a cause of action, a demurrer should have been interposed, otherwise such objection was waived. It is also contended that the Circuit Judge erred in ordering a sale of the property.

The rights of the vendor and vendee for enforcement of the contract are practically the same, and the Court, in the exercise of a wise discretion, may order a sale of the property, whether the action for specific performance was brought by the vendor or by the vendee. *Gregorie* v. *Bulow,* Rich. Eq. Cas. 235; *Walker & Trenholm* v. *Kee,* 16 S. C. 76; *Peake* v. *Young,* 40 S. C. 41, 18 S. E. 237; *Blackwell* v. *Ryan,* 21 S. C. 112; *Good* v. *Jarrard,* 93 S. C. 229, 76 S. E. 698, 43 L. R. A. (N. S.) 383; *Whitmire* v. *Boyd,* 53 S. C. 315, 31 S. E. 306.

"Where equity has once acquired jurisdiction, by reason of the claim for specific performance, it may retain jurisdiction and proceed to a complete adjudication, even to the extent of establishing legal rights. Thus, in addition to decreeing specific performance the Court may give judgment for possession." 20 Enc. Pl. & Pr. 479, 480.

"On a bill by a vendor against a vendee, the sale of the latter's equitable estate in the land may be ordered to satisfy the unpaid purchase price, and a judgment against any deficiency may be entered against the defendant, but it is not a matter of course to direct a sale, and the Court may simply foreclose the vendor's right of purchase." *Id.* 481.

"Where specific performance of an agreement is impracticable, the plaintiff may have approximate relief, in some other form, which will secure to him the substantial advantages of his contract. The Court is bound to see that it does that complete justice at which it aims, and which is the ground of its jurisdiction." *Id.* 479.

The exceptions raising other questions are overruled, for the reasons stated by his Honor, the Circuit Judge.

Judgment affirmed.

MR. JUSTICE FRASER concurs with the Chief Justice.

MR. JUSTICE HYDRICK, *dissenting.* The plaintiff states his cause of action in his complaint as follows:

(1) "That on the 7th day of February, 1903, Robert J. Palmer and Ainsley H. Dinkins entered into an agreement

under seal whereby the said Robert J. Palmer leased to said
Ainsley H. Dinkins all that piece, parcel and tract of land
(describing it), being the same land conveyed by said Ains-
ley H. Dinkins to said Robert J. Palmer by deed dated Feb-
ruary 6, 1903, and recorded in clerk's office, Richland
county, in Deed Book AH, p. 222; that the said agreement
provided that the said lease should continue from year to
year for the term of ten years from the date thereof, and
that the said Ainsley H. Dinkins, his heirs, executors,
administrators, and assigns, should pay to the said Robert J.
Palmer the annual sum of $100 as rental for said land; and
in said agreement the said Robert J. Palmer covenanted and
agreed with the said Ainsley H. Dinkins to sell and convey
to him the said tract of land at the price of $1,200 at any
time during the continuance of said lease; that, in pursu-
ance of said agreement, the said Ainsley H. Dinkins went
into possession of said tract of land and remained in posses-
sion of same until his death, as hereinafter set forth, and, as
plaintiff is informed and believes, did, from time to time,
pay the annual rental provided for in said agreement."

(2) Alleges the lunacy of Palmer and the appointment
of Simons as his committee.

(3) Alleges the death of Dinkins, leaving a will of which
plaintiff is executor.

(4) "That in and by the terms of said will the testator
devised and bequeathed all of his property, both real and
personal, including all of his rights under the aforesaid
agreement with Robert J. Palmer, whereby the said testator
acquired a lease upon the tract of land above described,
together with an option to purchase the same, to his five
children, their heirs and assigns, share and share alike; and
said testator, in said will, authorized and empowered his
executor to take all proper and necessary steps to comply
with the terms and provisions of the aforesaid agreement,
and to complete the purchase of the said tract of land for the
use and benefit of testator's children, with the power to insti-
tute or prosecute all necessary suits and proceedings in the

premises, and with full power and authority to execute any mortgage or mortgages to secure the payment of such sum or sums as may be necessary to comply with the purchase of the said tract of land."

(5) Alleges that the defendants, other than Simons, are the children and devisees of Dinkins, and that some of them are infants.

(6) Alleges that the estate of Dinkins is in debt, and that it will be necessary to mortgage the personal property of the estate and the crops growing on the land to raise funds to make and gather the crops and support testator's children.

The prayer of the complaint is as follows:

"(1) That the amount due upon the contract of purchase aforesaid be ascertained and determined, and upon the payment of the same to W. J. Simons, as committee of Robert J. Palmer, that a deed of the said tract of land be executed to the children of Ainsley H. Dinkins, defendants herein.

"(2) That the plaintiff, as executor, be authorized and empowered, upon the execution and delivery of the deed aforesaid, to mortgage the said tract of land for the purpose of raising such an amount as will pay the sum found to be due thereon, and also such amount or amounts as may be necessary to pay off and discharge the claims and obligations of the estate, and the costs and expenses of this action; and that the plaintiff, as executor, also be authorized to mortgage the agricultural crops for the current year upon said tract of land, or, if necessary, to mortgage the personalty of said estate, in order to pay for the making and gathering of said crop and for the support of testator's children.

"(3) For such other and further relief as may be just and necessary, and for the costs of this action."

The answer of Simons admits the allegations of paragraph 2 of the complaint, and denies all others, and sets out as an exhibit thereto, a copy of the agreement referred to in paragraph 1 of the complaint, which reads as follows: "This agreement made this 7th day of February, A. D. 1903, by R. J. Palmer, on the first part, and Ainsley H. Din-

kins, of the second part, both of the county and state afore-
said, witnesseth: That the party of the first part does hereby
lease, demise and to farm let to the party of the second part
that tract of land (describing it), being the land this day sold
and conveyed to R. J. Palmer by the said Ainsley H. Din-
kins. This lease to continue from year to year for the
term of ten years from this day, provided the rental
hereinafter stipulated for is paid regularly, as herein
stipulated; but failure to pay any installment of rent when
due shall, at the option of the party of the first part, termi-
nate immediately on the exercise of such option, this said
lease. The party of the second part hereby stipulates and
covenants and agrees, to and with the party of the first part,
his heirs, executors, administrators, and assigns, to pay to
the party of the first part, as rental for said lands above
mentioned, the annual sum of one hundred dollars, said ren-
tal to be paid on or before December 1st next, and on or
before December 1st of each succeeding year, during the
continuance of this lease. The party of the first part further
covenants to and with the party of the second part to sell
and convey to said party of the second part the above men-
tioned and described tract of land at the price of twelve
hundred dollars, upon payment by said party of first part
of said purchase price, at any time during the continuance
in force of this lease; and it is further stipulated by and
between the parties hereto that the said Ainsley H. Dinkins,
if he chooses to exercise the option to purchase said lands,
may make payments to the said R. J. Palmer from time to
time on his said contract in such sums as he sees fit; and
that all payments made by said Dinkins in excess of the
yearly rental above stipulated shall be credited on the pur-
chase price above named, but that the yearly rental shall
continue as above stipulated until the purchase money is paid
in full and conveyance made for said land, under the terms
of the foregoing contract."

The Court held that the deed from Dinkins to Palmer
and the contract above set out constituted Palmer a mort-

gagee of the land, and that this was an action to redeem. It found that no part of the principal of $1,200 due by the estate of Dinkins had been paid, and, after allowing all proper credits, that there is still due $582.35 on the rent stipulated for in the contract, and adjudged that the land be sold, and out of the proceeds, after paying the fees and costs and expenses of sale, the balance due as rent and the principal sum of $1,200 be paid to Simons, as committee of Palmer, and the balance, if any, be divided among the heirs of Dinkins or be paid to his executors, and that the costs should be paid equally by plaintiff and the estate of Palmer, as one side was no more at fault than the other. From this decree, Simons appealed.

A preliminary question to be decided is whether notice of appeal was served in time. There were two decrees. The first decided the issues of law and fact and the rights of the parties thereunder. This decree was filed January 28, 1913, and notice of the filing thereof was served upon defendant's attorneys, and notice of appeal was not served within ten days thereafter. But, at the foot of this decree, the Judge directed that a formal decree be prepared and submitted to him, and expressly retained jurisdiction of the cause until that could be done. The formal decree was filed March 25, 1913, and notice of appeal was served March 28th, within ten days thereafter, and was therefore in time, as the first decree was not intended to be final.

The contract between Dinkins and Palmer is too plain to require construction. Upon its face, no other construction can be given it than that the parties intended an absolute and unconditional conveyance of the land by Dinkins to Palmer, and a lease thereof by Palmer to Dinkins, with the option to purchase it at any time during the continuance of the lease, and, upon payment of the agreed price, to have a reconveyance thereof. There is not a particle of extrinsic evidence tending to show any other intention; there is evidence that Dinkins bought the land from Childs and

owed him for it, and that Palmer paid Dinkins' debt to Childs; but there is no evidence that he took an assignment of the debt. The payment by Palmer of Dinkins' debt to Childs was no doubt the consideration of the deed of Dinkins to Palmer. There is no evidence of any existing debt of Dinkins to Palmer, which would be necessary to make the transaction a mortgage. *Hodge* v. *Weeks,* 31 S. C. 281, 9 S. E. 953. The testimony of Mr. John P. Thomas, the attorney who was consulted by Dinkins, shows clearly that Dinkins understood the transaction as a sale and lease with option to buy. Throughout his testimony he refers to the paper as a lease and contract of purchase. In his will, which was written by Mr. Thomas, Dinkins refers to it as a contract "whereby I have acquired a lease upon certain premises in Richland county, together with an option to purchase same," and authorizes his executor to take the steps necessary to comply with the terms of the contract and "complete the purchase of the land herein described." By reference to the complaint, it will be seen that the action is predicated upon the theory that the transaction was a conveyance, lease, and contract to purchase. It is there alleged that the land was conveyed by Dinkins to Palmer; that Palmer leased it to Dinkins, with the option to purchase; and that Dinkins went into possession in pursuance of said agreement. Nowhere, either in the written instruments, in the testimony, or in the complaint, is there the slightest intimation that the transaction was intended as a mortgage.

The facts of the case bring it so clearly within the principles of previous decisions of this Court that it is only necessary to refer to them to show that the transaction cannot be held to be a mortgage without overturning the principles decided in those cases. *Brown* v. *Bank,* 55 S. C. 70, 32 S. E. 816; *Creswell* v. *Smith,* 61 S. C. 575, 39 S. E. 757; *Ray* v. *Counts,* 82 S. C. 555, 64 S. E. 1135; *Williams* v. *McManus,* 90 S. C. 490, 73 S. E. 1038. In each of these cases there was evidence tending to show that the transaction

in question was intended to be a mortgage, while, in this case, there is none. In *Williams* v. *McManus* the Court said: "While it is undoubtedly true that a deed which appears on its face to be an absolute conveyance may in equity be declared a mortgage if the evidence be sufficient to show that such was the intention of the parties, yet it is equally true that the presumption is that the deed is, what on its face it purports to be, an absolute conveyance, and, to establish its character as a mortgage, the evidence must be clear, unequivocal, and convincing, for otherwise the natural presumption will prevail." These authorities show that the Circuit Court erred in holding that Palmer was a mortgagee.

The complaint shows that the action is one for specific performance, and not an action to redeem, and the Court erred in treating it as an action to redeem. *Sims* v. *Steadman,* 62 S. C. 300, 40 S. E. 677; *Francis* v. *Francis,* 78 S. C. 181, 58 S. E. 804.

There is no testimony that Dinkins ever notified Palmer, or his committee, that he intended to exercise his option to purchase. He could have availed himself of it, or not, as he saw fit. At no time could Palmer or his committee have brought suit against him for specific performance, because he had neither exercised the option nor expressed any intention of doing so. Therefore it cannot be said that, at any time prior to the commencement of this action, Dinkins owed Palmer anything on the purchase price of the land. But the commencement of the action during the continuance of the lease would have been a sufficient acceptance of the option to entitle Dinkins' executor and the beneficiaries under his will to specific performance of the contract, if the plaintiff had shown that he was ready and willing and able to perform. Dinkins' death, the minority of some of his children, and the lunacy of Palmer are sufficient in equity to excuse the failure to tender performance before action brought, since Palmer's misfortune made it impossible for

him to execute a deed, if payment of the purchase price had been tendered, and since his committee could not have done so, without the order of the Court. Even in that event the Court would not have decreed specific performance, except upon payment of the balance found to be due to Palmer by Dinkins for rent, on the principle that he who seeks equity must do equity. *Lake* v. *Shumate,* 20 S. C. 23.

The rule is well settled that, in actions for specific performance, "plaintiff must show performance or ability, readiness, and willingness to perform all the provisions of the contract to be performed by him. Save in the exceptional case of immaterial default admitting of compensation, relief must be denied to a plaintiff who is unable to perform his part of the contract." 36 Cyc. 693; 26 A. & E. Enc. L. (2d ed.) 42.

In *Davenport* v. *Latimer,* 53 S. C. 572, 31 S. E. 633, after finding that there was no evidence of tender of performance by plaintiff, or of readiness and willingness and ability to perform, the Court said: "Specific performance is not a matter of absolute right, but rests in the sound judicial discretion of the Court, guided by established principles. Generally a vendee cannot maintain an action against a vendor for specific performance of a contract to sell land, unless he shows that he has complied, or offered to comply, with the contract on his part, and was refused by the vendor. But, since equity leans to compensation in preference to forfeiture, the vendee, if he cannot show exact compliance with the contract on his part, may still have specific performance or compensation, provided he is not guilty of laches in the assertion of his claim, stands ready and willing to comply, and shows reasons satisfactory to the Court in excuse of his failure to comply. Plaintiffs have not brought themselves within this principle, for, as stated, they have not complied, or offered to comply, and have shown no reason in excuse of their default, even if it be conceded that an action brought

two years after default on the contract is not laches under the circumstances of this case." See, also, *Moseley* v. *Witt*, 79 S. C. 143, 60 S. E. 520, where the Court said: "There is no evidence whatever that the plaintiff has paid or offered to pay the entire purchase money, and under the contract he was not entitled to a conveyance until the whole of the purchase money should be paid. Indeed, he could not compel defendant to accept payment until the whole became due. The plaintiff's action would necessarily fail on this ground."

In the case at bar the plaintiff not only failed to show readiness, willingness, and ability to perform, but, on the contrary, the allegations of his complaint show beyond doubt that he was not able to perform, except by mortgaging the land to raise the money to pay for it, which, of course, he could not do, because he did not have the legal or equitable title.

The proposition that, in an action like this by the vendee against the vendor for the specific performance of a contract of sale, where there is no complication of equities, the Court should order the land sold to pay the purchase price out of the proceeds is too untenable for discussion. That would not be specific performance of the contract which the parties made, but would be the making of an entirely different contract for them, and enforcing it in a manner not contemplated by them. The vendor agreed to part with his title only upon payment of the purchase price. But, if the Court orders a sale of the land, the purchaser at such sale will acquire the title, even though it should bring much less than the price which the vendor agreed to take and the vendee agreed to pay. No authority sanctioning such a course has been cited, and I dare say none can be found. In such actions by the vendor against the vendee, and perhaps, also, in some actions by vendee against vendor, where the equities are so complicated that a sale is necessary to effect

the intention of the parties, a sale may be ordered.   But this case presents no such features.

The judgment should be reversed.

MR. JUSTICE WATTS concurs in the dissenting opinion of MR. JUSTICE HYDRICK.

The Supreme Court being equally divided, the judgment of the Circuit Court is affirmed.