## CASES ARGUED AND DETERMINED

IN THE

# SUPREME COURT OF SOUTH CAROLINA.

Justices of the Supreme Court during the Period comprised in this Volume.

Hon. WILLIAM D. SIMPSON, Chief Justice.
Hon. HENRY McIVER, Associate Justice.
Hon. SAMUEL McGOWAN, "        "

## NESBITT v. CAVENDER.

1. A point not raised by the pleadings nor determined by the Circuit Judge, although reported upon by the master, is not properly before this court for consideration.

2. Whether a deed to land, absolute on its face, taken by A from B at the request of C, was intended to operate as a mortgage from C to A, may be shown by parol evidence.

3. But where the testimony failed to establish any such agreement between A and C, parol evidence is inadmissible to show that A was to buy with the privilege on the part of C to take the land at some future time on payment of the purchase money, nothing being agreed upon as to the form of the security. Such evidence is obnoxious to the statute of frauds.

4. Case remanded with leave to plaintiff to amend his complaint, so as to raise the question of a constructive trust.

Before Pressley, J., Richland, November, 1886.

The opinion states the case.

*Messrs. Lyles & Haynsworth,* for appellants.

A deed, absolute on its face, cannot be shown to be a mortgage in favor of one who, at the time of the conveyance, had no interest, legal or equitable, in the property. *Jones Mort.,* §§ 331, 323; 96 *Ill.,* 456; 45 *N. Y.,* 589; 97 *U. S.,* 624; 1 *Story Eq.,* 152; 1 *Jones Mort.,* §§ 268, 269, 335, 327. The authorities relied on by respondent (*Jones Mort.,* §§ 241, 268, 331; 21 *S. C.,* 392) are not in conflict with the above. 12 *Rich. Eq.,* 343; 15 *S. C.,* 356. No trust can be raised in favor of the plaintiff. 7 *Rich. Eq.,* 378, and other authorities. The testimony shows that there was no mortgage—no fraud.

*Messrs. A. C. Moore* and *Pope & Shand,* contra.

June 23, 1887. The opinion of the court was delivered by

Mr. Chief Justice Simpson. The facts of this case about which there is no dispute are as follows: Previous to February, 1879, the plaintiff, respondent, owned certain real estate, situate in the city of Columbia, which he had mortgaged to the Columbia Building and Loan Association. On February 3, 1879, this land was sold under a decretal order of foreclosure of said mortgage, the president of the association, George L. Dial, being the purchaser. After this sale Dial agreed to sell and reconvey the premises to the plaintiff for $300 cash. The plaintiff being unable to raise this sum himself, submitted the matter to the defendant, Thomas S. Cavender, who, having money of his son, the defendant, Charles Cavender, under his control, consented to make the purchase, and did purchase, taking titles to his said son. Shortly after this purchase the said T. S. Cavender executed a lease of the premises to the plaintiff, "to hold for the term of his natural life and that of his wife, Savannah, and the survivor of them," it being stipulated in said lease that the lessee should pay the sum of $36 per annum as rent, in monthly instalments of $3 each, &c., upon default of which for thirty days the said Charles Cavender should have the right to re-enter and repossess the

premises, &c., &c. Some time after this, to wit, in 1884, many payments having been made by the plaintiff to the said Thomas Cavender, which were entered in a certain book in possession of the plaintiff, subsequently mislaid or lost, as alleged, the plaintiff and the said Cavender failing to agree in reference to some matter connected with the land, the said Cavender instituted proceedings under section 1819, General Statutes, to eject the plaintiff. In the meantime Charles Cavender had conveyed the land to his father, Thomas S., who had mortgaged the premises to the defendant, Rose L. Sprague.

Under the above state of admitted facts the action below was commenced, with the following additional alleged facts, all of which are denied by the defendants, to wit: 1st. That the deed from Dial to Cavender was executed under these circumstances, to wit: the plaintiff being unable to raise the $300, at which sum Dial had agreed to sell to him, he applied to Cavender to raise this amount for him, which Cavender consented to do, agreeing to advance said amount out of funds which he said he had in his possession belonging to his son, to secure which he was to take the titles to his said son, with the distinct understanding and agreement between himself, the said Cavender, and Dial, that he was to hold the same as a mortgage on the premises to secure the payment by the plaintiff of the said $300 so advanced for him, which sum being repaid, the premises should be conveyed to the plaintiff. 2d. That the lease above referred to, with the stipulations therein, executed by the plaintiff and defendant, T. S. Cavender, was the result of a wilful and deliberate fraud practised upon the plaintiff by the said Cavender, the said plaintiff being unable to read, and the paper being misrepresented to him. 3d. That plaintiff had made several payments to the said Cavender, amounting to $150, on account of the principal and interest of the purchase money, and not for rent, which payments had been entered in the book which had been lost, and that since then he had made additional payments, amounting to at least $124.60, on account of the debt and interest, and not rent, but which had been fraudulently entered by the said Cavender as for rent. As stated above, the defendants denied these allegations, which made the issue in the case.

It was admitted that no one of the defendants had any higher equity than the others, so that no difference was made in the consideration of the cause, because of the subsequent conveyance and mortgage referred to above.

The case was referred to master Seibels, who made an elaborate report, finding as matters of fact upon the disputed allegations in the complaint above : "1st. That the deed from Dial to Cavender was without condition, promise, agreement, or understanding in favor of the plaintiff other than is submitted in the lease. 2d. That on same day (that the deed was executed), in pursuance of a previous verbal agreement, the plaintiff and the said defendant, as the agent of his son, executed in duplicate a lease of said premises upon the terms therein stated, the plaintiff receiving a copy marked 'exhibit L,' and the defendant retaining the copy marked 'exhibit K.' 3d. That the plaintiff paid to the defendant various sums of money from time to time as 'rent' under said lease and took receipts therefor as 'rent.'" Upon these facts the master considered that there was neither a constructive trust nor a mortgage in favor of the plaintiff growing out of the transaction between him and Cavender. And as matter of law he concluded that the defendant, T. S. Cavender, was seized in fee of the premises, subject to the terms of the lease to the plaintiff, and that the complaint should be dismissed.

This report, upon exceptions by the plaintiff, respondent here, was heard by his honor, Judge Pressley, who, finding as a fact, "that the deed from the association to Cavender was intended as a mortgage, and that the lease to the plaintiff was a device to foreclose the same easily on non-payment of the monthly interest thereon, called rent, overruled the defendant's objection, that the case was within the statute of frauds." And he "ordered and adjudged that said deed should stand as a mortgage to secure the defendant any balance which may be owing to him on principal and interest of said loan and any repairs, taxes, or other expenditures he may have incurred, which, according to the terms of the contract, plaintiff should have paid. And that the case be referred back to the master to take the testimony and report the amount due to defendant according to this decree."

From this decree the defendants have appealed upon the following exceptions:

I. "Because his honor did not hold that the amended complaint in said action failed to allege any facts constituting fraud on the part of the defendants as sufficient to raise a constructive trust in favor of the plaintiff.

II. "Because his honor did not hold that said complaint having alleged only an agreement to convey, and the evidence having tended only to establish such agreement by parol, there was no cause of action in favor of the plaintiff established by his own evidence.

III. "Because his honor did not hold that parol evidence was inadmissible to establish the agreement alleged in said complaint.

IV. "Because his honor held that the testimony of parties to a cause is universally to be viewed with suspicion, and that under such rule the testimony of the plaintiff fully offset that of the defendant, Thomas S. Cavender, regardless of the relative character of the parties and of their respective statements.

V. "Because his honor considered the testimony of the defendant, Cavender, as inconsistent in the particulars specified in his decree.

VI. "Because his honor considered that the defendant Cavender's not having an additional witness to his transactions with the plaintiff, and his objecting to the introduction of hearsay evidence as to the statements of one George L. Dial, deceased, not a part of the *res gestæ*, were circumstances of suspicion against him.

VII. "Because his honor considered that said defendant was contradicted in the particulars named by the witnesses Percival, Parker, Taylor, Albert Davis, and Sancho Davis.

VIII. "Because his honor misconceived the testimony of the witness Smith, and did not discard the testimony of the witness Gibson, for the reasons stated by the master.

X. "Because his honor did not sustain the findings of fact by the master and overruled his report.

XI. "Because his honor found, as matter of fact, that the deed from Dial, president, to Cavender, and the lease from Cavender to Nesbitt, were intended simply as a mortgage from Nesbitt to Cavender.

XII. "Because his honor held that it made no difference in considering the transactions, that Cavender derived his title from a third party, and not from Nesbitt.

XIII. "Because his honor adjudged that said deed stand only as a mortgage.

XIV. "Because his honor did not adjudge that even if said deed was intended only as a mortgage, that the plaintiff could not maintain his action without having first tendered the amount due thereon to the defendant, Cavender." This last exception was abandoned.

The question whether there was such fraud on the part of T. S. Cavender in obtaining the conveyance from Dial, the president of the building and loan association, as to raise a constructive trust in favor of the plaintiff, was not one of the issues made in the pleadings. There was no allegation in the complaint of fraud in reference to obtaining that conveyance, nor did the plaintiff claim in his complaint that this transaction raised a constructive trust in his behalf. On the contrary, the plaintiff based his cause of action upon the claim that said conveyance was in substance and in intent a mortgage, and the purpose of the action was to have it so declared. It is true, the master entertained the question of a constructive trust, and the plaintiff excepted to his report upon the ground, among others, that he erred in not finding, as a matter of fact and law, that a constructive trust *ex maleficio* arose against the defendant and in favor of the plaintiff. But the Circuit Judge did not pass upon this question, and not sustaining the master upon the real question involved and relied upon in the complaint, to wit, that the deed from Dial was intended as a mortgage, he overruled his report upon that ground, which rendered it unnecessary to consider any other questions raised in said report. The first exception above is therefore irrelevant, and need not be considered.

2d. The complaint alleged something more than simply an agreement to convey ; it alleged an agreement that the deed in question was to be regarded between the parties as a mortgage, upon the satisfaction of which, by the plaintiff, the land was to be conveyed to him. Such being the fact, his honor could not have held as demanded in exception 2d.

Exception 3 will be considered with exceptions 11, 12, and 13, as these exceptions, with exception 3, all relate to the same matter, and are involved in the same general question, whether his honor erred in construing the Dial deed as a mortgage. Exceptions from 4 to 10, inclusive, complain mostly of the reasons given by his honor, why he put more confidence in some of the witnesses than in others, and especially why he was disposed to look with suspicion upon the testimony of T. S. Cavender. It is hardly necessary to take these up in detail, as no legal error is alleged, and especially as the whole matter is involved in exception 10, in which it is complained "that his honor did not sustain the findings of fact of the master, and overruled his report."

The main question of fact in the case. was whether the Dial deed was intended and understood by the parties as a mortgage. Upon this question the master and Circuit Judge differed. Upon this question it is hardly necessary to refer to authority for the position that parol testimony was competent. The appellants' counsel in their argument frankly admit "that a deed absolute on its face may be shown by parol evidence to have been intended as a mortgage by the grantor to the grantee." This, then, being the question before the court, and not simply whether Cavender had agreed to sell and convey to the plaintiff at some time in the future, dependent upon subsequent events, the admission of parol testimony directed to this question was not error, as complained of in exception 3.

Exceptions 11, 12, and 13 raise the question, was his honor correct in holding that these parties understood and intended the Dial deed to be a mortgage, the lease being a mere device to foreclose the same easily, and that it should be so adjudged and decreed? These are the important questions in the case. The first is a question of fact, and the second a question of law. We have carefully examined the testimony with reference to the question of fact, and while there is abundant evidence that Cavender bought the land at the instance of Nesbitt, and with the view, as understood by Nesbitt, to enable him to hold the property ultimately, in the event that Cavender should be repaid the purchase money, yet we do not find the proof of a distinct agreement between these parties, that the money advanced by Caven-

der was to be regarded as a loan to Nesbitt, which was to be secured by the Dial deed, operating as a mortgage. After the foreclosure of the building association mortgage, Nesbitt learned that Mr. Dial, the president, and purchaser at said sale, was willing to let him have the land back at $300. Not being able to raise this sum he appealed to Cavender to help him, his object being to get the land into hands where he might redeem it· by refunding the amount advanced. Cavender no doubt understood this to be the object of Nesbitt, and it is manifest that he consented to buy with full knowledge that Nesbitt understood that in some way said purchase was for his benefit, in the event that he returned the purchase money.

But there was no definite understanding or agreement as to the means by which the return of said purchase money should be secured. It could have been secured in two ways, 1st, by a loan from Cavender to Nesbitt of the $300, then a purchase by Nesbitt from Dial, with a mortgage from Nesbitt to Cavender; or, 2d, by a deed from Dial to Cavender upon the payment by Cavender of the purchase money, the land to be held in this latter case, until said purchase money was repaid by Nesbitt. If the first scheme had been adopted actually and in terms, or if it was clear from the testimony, parol or otherwise, that such, by agreement, was to be the effect of the transaction, although the papers executed were not in form of that character, the plaintiff's claim would be much stronger than it is; but we have not been able to find that there was an agreement of this kind between the parties. In our opinion the evidence goes no further than that Cavender was to buy, with the privilege on the part of Nesbitt to take the land at some future time on payment of the purchase money, nothing being said as to the mode in which Cavender was to secure himself. Under these circumstances Cavender took a deed directly to his son with the agreement as to the privilege of Nesbitt to subsequently get the land, resting in parol, and therefore obnoxious to the statute of frauds.

Not being able to concur in the finding of fact of the Circuit Judge, upon which his judgment decreeing the Dial deed to stand as a mortgage, was based, we deem it unnecessary to discuss the question of law above.

It is the judgment of this court that the judgment of the Circuit Court be reversed, and that the case be remanded for a new trial. And inasmuch as the question of *constructive trust* was not adjudicated by the Circuit Judge, that question is left open, with the privilege on the part of the plaintiff to amend his complaint, should he be so advised, so as to raise that question.