## BROWNLEE v. MARTIN.

1. Where plaintiff sues for the recovery of land to which he holds the legal title, and defendant answers, alleging that such title was originally intended to operate as a mortgage, which has since been satisfied, the answer raises an equitable defence, and issues arising out of this defence being submitted to the jury, their verdict thereon is only for the enlightenment of the chancellor's conscience, and is not binding on him. On appeal from his findings overruling the jury, their verdict is without effect in this court.

2. There being a conflict of testimony in a chancery case heard by the Circuit Judge, with the aid of a jury, the findings of fact by the judge, overruling the verdict of the jury, sustained, such findings not being opposed by the great preponderance of the evidence.

3. An absolute deed is shown in this case to have been intended as a mortgage from the terms of a written agreement under seal subsesequently entered into between the parties. But such agreement not being based upon any new consideration, it could not operate to destroy or change the mortgage. The burden of proof is on the mortgagee to show such an effect.

Mr. Justice McGowan, *dissenting.*

Before Fraser, J., Abbeville, February, 1887.

This was an action by John E. Brownlee against Josephine A. Martin and John M., her husband, commenced January 6, 1882. The case was once before in this court on appeal. See 21 *S. C.*, 392. The charge of the Circuit Judge, in submitting the issues to the jury, was as follows:

Gentlemen of the jury: These are issues of fact, and for you

alone.  I don't know that I can aid you at all.  You know the
witnesses and I do not.  You know their character for truthful-
ness and I do not.  There is a direct conflict of testimony and
you must decide it.

The Circuit decree, omitting its statement, was as follows:

There is a direct conflict of testimony between John E. Brown-
lee, the plaintiff, and Mrs. Brownlee, his wife, on the one side, and
Josephine A. Martin, one of the defendants, and her husband,
John M. Martin, and T. C. Gower, their relative; the three latter
in favor of the view that the conveyance was intended as a mere
security for the money paid or advanced or loaned by plaintiff,
and of the two former that the conveyance was made to plaintiff
for his own use and benefit, and not as a security.

Several witnesses were examined by the defendants.  The wit-
ness, Knox, says that he "heard him (plaintiff) say he had loaned
her some money, or would have to do it, and he was troubled
about it to make the payment."  "I understood him the second
payment, not the first payment at all."  The witness, Dr. Bell,
says: "I advised him then to get Judge Thomson to write it, and
he said he would."  (The conditional sale was written by Judge,
then Mr., Thomson.)  "After that, after so much talk, and the
title at the time was entirely to be understood, I say that the title
at the time was entirely to be understood in *lieu of the mort-
gage* of the paper he held for the money loaned, but really not
intended to be a sale of land at that time,"  *  *  *  and on
cross examination this witness says "he was sorry for her (Mrs.
Martin), and would lend her it (the money)."

Then, again, all the circumstances seem to point to a purpose
on the part of Mrs. Martin, of which plaintiff could not have been
uninformed, to retain for her own use and benefit these lands of
her deceased relative.  The payment of $56 as interest before
the expiration of the two years given for the payment by the
"conditional sale," seems to me to contemplate the existence of
some debt due by Mrs. Martin to plaintiff due, or on which at
least interest was due, outside of the "conditional sale" referred
to.  I think the weight of the testimony is in favor of the view
that Mrs. Martin always looked upon the conveyance to plaintiff
as a mere security for the repayment of the money advanced by

him; that plaintiff knew that she accepted the arrangement under this view, and that such was the plaintiff's own view of the matter until he saw fit to make a condition on which he would execute title for the "river place" to Mrs. Martin, his *wife's consent to sign her dower*. The plaintiff, Brownlee, says: "I told her (Mrs. Martin) if I succeeded in selling the 'home place' for $2,000, and if my wife would sign her dower, I would give her the 'river place.'" There is nothing in the testimony to show that plaintiff was in a pecuniary condition to make any such donation. The witness, Knox, called by the defendants, says: "He (plaintiff) told me about selling the place to Mr. Holland, and that he had *given* Mr. Martin the 'river place.'"

I am always reluctant to reverse the finding of a jury even in an equity case, but on a careful examination of all the circumstances of this case, and the testimony of the witnesses, most of whom were examined before me, I have come to the conclusion that the conveyance of the "home place" and the "river place" to plaintiff by the executor of Joel J. Cunningham was made with the understanding between plaintiff and Mrs. Martin that the same should stand as a mortgage to secure the repayment of the purchase money advanced, and to be advanced, by plaintiff for the benefit of Mrs. Martin. That being a mortgage, the status was not changed by the execution of the paper called a "conditional sale," which was, it is admitted, without any new consideration moving the parties thereto; and that upon the surrender to plaintiff of the "home place" and occupation by the defendant, Josephine A. Martin, of the "river place," there was a valid and binding settlement in full by which Mrs. Martin was to hold as her own the "river place," without any right to demand from plaintiff any surplus he might realize by selling the "home place" for an amount more than sufficient to repay him with interest.

It is therefore ordered and adjudged, that the plaintiff do execute and deliver to the clerk of this court, to be by him delivered to the defendant, Josephine A. Martin, a good and sufficient deed of conveyance, without warranty under seal and in the presence of two witnesses, of the said "river place," and that the complaint and counter-claim as to all other purposes be dismissed.

*Messrs. Parker & McGowan,* for appellant.

*Messrs. Perrin & Cothran,* contra.

April 3, 1888.    The opinion of the court was delivered by

MR. CHIEF JUSTICE SIMPSON.    Respondent, Mrs. Martin, at a sale of real estate, made by Judge J. S. Cothran, December 3, 1877, under an order of court, as executor of the will of J. J. Cunningham, deceased, (in which will Mrs. Martin was the principal beneficiary) bid off two tracts of land, one known as the home place, and the other as the river place, at the price of $1,609.75, and being unable to comply, or failing from some other cause, John E. Brownlee, the appellant, complied, and took titles from the said executor by a deed absolute upon its face.    Mrs. Martin, however, went into possession of both tracts.    Some time after this, to wit, in January, 1878, a paper, styled a conditional sale, was executed between the said Josephine A. Martin, John M. Martin, and the said John E. Brownlee, all of them signing it under seal, in which, after reciting the facts, that said lands had been bid off by Mrs. Martin at said sale, and that she, not being able to comply, had transferred her bid to the appellant, to whom the said executor had duly conveyed on December 3, 1877, it was stipulated that if said Mrs. Martin, &c., should truly pay to the said appellant, his executors, &c., the said sum of $1,609.75, with interest, on or before December 3, 1879, in such case the said Brownlee would convey the said lands to the said Mrs. Martin, her heirs, &c.—further stipulating that the said respondents, being in possession, should not commit waste ; and, further, that said instrument was not a mortgage, but a conditional sale, and upon failure of Mrs. Martin to comply, that on the day mentioned, or thereafter, the said Brownlee might take possession as his own absolute property in fee simple under the deed made to him by Judge Cothran.

Afterwards, to wit, in January, 1880, the appellant having found a purchaser for the home place at $2,000, at which place the respondents were then residing, said respondents gave up said place and moved to the river place.

Subsequent to this, to wit, in January, 1882, the action below

was commenced by the appellant for the recovery of said river place. The respondents answered,[1] setting up the defence that the deed from Judge Cothran to the appellant was intended as a mortgage to secure the purchase money which appellant had advanced for her on her bid at Judge Cothran's sale; that the transaction therein amounted to a loan of the purchase money to her by appellant, and that the deed was intended as a mortgage to secure said loan; that the subsequent conditional sale, so-called, was only intended to fix the time when said loan was to mature, and that this was not carried out in terms, because, just before the maturity of the said loan, the appellant finding that he could sell the home place for more than the $1,609.75, to wit, for $2,000, and thus over-pay himself, proposed to Mrs. Martin that if she would consent to said sale and give up the home place, she might take the river place, and settle the whole matter; that she assented to this arrangement, whereupon the home place was sold by the appellant to one Holland for $2,000, and she moved to the river place, and has held the same ever since as her own property.

The case was heard first by his honor, Judge Wallace, resulting in a mistrial. It was then heard by his honor, Judge Kershaw, with a verdict and judgment for the plaintiff, which, upon appeal, was vacated and a new trial ordered. 21 *S. C.*, 402. It then came before his honor, Judge Fraser, who submitted the issues of fact to a jury, without objection on either side. These issues (which will be stated below) were found in favor of the plaintiff. They were, however, overruled by his honor, who decided for the respondent, Mrs. Martin, and ordered titles from the appellant, Brownlee, to the said Mrs. Martin, of the "river place," and that the complaint and counter-claim be dismissed; from which decree the case is now before us on appeal of the plaintiff.

At the hearing the following issues were submitted to a jury: "1st. Has the plaintiff a legal title to the 'river place' described in the complaint? 2nd. Was the deed of J. S. Cothran, execu-

[1] The answer here stated was the amended answer filed after the decision of the former appeal, and differs in some particulars from the answer there considered.—REPORTER.

tor, to plaintiff, dated December 3, 1877, executed to him in pursuance of any agreement between plaintiff and defendant, Josephine A. Martin, or any one acting for her? 3rd. If executed in pursuance of any agreement between them, was it so executed to him as a purchaser for his own use and benefit, or was it so executed as a security for money advanced or loaned by plaintiff to defendant, Josephine A. Martin, to pay the purchase money to J. S. Cothran, executor? 4th. Was there any agreement between plaintiff and the defendant, Josephine A. Martin, that plaintiff should have as his own the 'home place,' and the defendant, Josephine A. Martin, the 'river place'? 5th. If there was any agreement, as referred to in issue No. 4, was it a final settlement between the parties of their respective rights in reference to these two parcels of land, and their mutual obligations in reference thereto?"

The response of the jury to these issues was as follows: To the 1st, they said, "We find for the plaintiff." To the 2nd, "Yes." To the 3rd, "For the plaintiff's own use and benefit." To the 4th, "No." And to the 5th, "Answered in No. 4."

It will be seen at once that these issues embraced the facts upon which the case mainly turned, or should turn, and the result must depend upon whether said facts shall be regarded as established in favor of the appellant or the respondents. If the former, then the appeal should be sustained, otherwise it must fail. Now, upon these facts the jury and the Circuit Judge have differed, the jury finding, as stated above, in favor of appellant, and the Circuit Judge overruling said findings of the jury, and sustaining the respondent. The question now arises, what is the character of this case? Is it a case in chancery or a case at law? In its inception, no doubt, it was a case at law on the part of the plaintiff, to wit, an ordinary action for the recovery of real estate; but the defendants, under the provisions of the code, interposed an equitable defence, which, in substance, amounted to an action by said defendants against the plaintiff, and it was the facts of this action, presented by way of defence, that the court referred to the jury, not as a right which either party had, but to enlighten the chancellor's conscience, to use the language of a former practice, and to assist him in arriving at a proper conclusion.

24

Such being the character of the case, it is not necessary to refer to authority in support of the proposition that the Circuit Judge was not at all bound by the findings of the jury, because it is now familiar doctrine, that in such cases he may sustain or entirely disregard such findings, as his judgment may determine, the facts, at last, being for him. Nor, on appeal from his findings, overruling the jury, can said findings of the jury have any effect here.

Now, the Circuit Judge below disregarded the findings of the jury on the issues of fact submitted, and having heard the testimony, predicated his decree upon an adverse finding to that of the jury on all the points involved in the defence. He found that the deed from Judge Cothran to the appellant was intended as a mortgage by the parties thereto; that the paper styled a "conditional sale," which was without any new consideration, did not change the character of this original deed, and that there was a valid and binding settlement made of the whole matter when Mrs. Martin surrendered the home place and moved to the "river place." He, therefore, ordered that the plaintiff execute and deliver a good and sufficient deed of the said "river place," without warranty, to Mrs. Martin, and that the complaint and counter-claim be dismissed. The exceptions of appellant, seven in number, all, except the 5th, contest in different forms the findings of fact of his honor, to wit, that the original deed from Judge Cothran was intended as a mortgage or security for the purchase money of the lands advanced by the appellant, and that there was an agreement between the parties that Mrs. Martin should have the "river place" and Brownlee the "home place" as a final settlement. The 5th exception complains that Mrs. Martin, having based her second defence upon the contract for a conditional sale, she could not repudiate it, and that the Circuit Judge should have so held.

The first two, to wit, the intent of the original deed and the agreement of the parties as to the two tracts of land, were questions of fact, and the findings of the judge, when tested by the established rule, must stand or fall as the application of that rule shall determine. True, there was conflict of testimony as to the intent of the Cothran deed, but we cannot say that the great pre-

ponderance of the evidence was against the findings of the judge. In addition to the positive evidence as to the understanding of the parties in reference to the object of the Cothran deed, it appears to us that the contents of the "conditional sale" sustains his honor's conclusion. That paper stipulated for a sale at the same price at which Mrs. Martin bid, and which Brownlee advanced, showing that the purpose of Brownlee was to secure a return of that sum, and nothing more. It further stipulated that unless this sum was returned to him with interest by the time fixed, that then Brownlee should take possession with an absolute fee simple title. Why this stipulation if he already had such title under the absolute deed from Judge Cothran? It must have been, because he felt that said deed was not what it appeared to be on its face, but was merely a mortgage, with the right of redemption on the part of Mrs. Martin. In addition, Mrs. Martin was in possession, not as tenant, but as mortgagor, in which capacity she had made a payment.

Neither can we overrule the finding of the judge that there was no new consideration supporting the "conditional sale." Nor was his finding that the surrender of the home place by Mrs. Martin, and her acceptance of the river place, was intended as a settlement of the whole matter, without evidence to support it. Holding it to be established, then, that the Cothran deed was intended to be a mortgage, what is the effect? This court said, on the former appeal in this case (21 *S. C.*, 392), when discussing this subject: "If it is shown that a deed absolute on its face was, at the time it was executed, only intended as a security for a debt, it will operate only as a mortgage; and it cannot be converted by any subsequent written agreement into an absolute conveyance, unless such subsequent agreement is based upon a sufficient consideration, and is shown to have been fairly made without undue influence by the creditor, and the burden of showing this is upon the mortgagee. In other words, it must amount to a sale of the equity of redemption fairly made." Once a mortgage, always a mortgage.

Now, the stipulation at the close of the agreement for a conditional sale, in which it is stated, that upon failure of Mrs. Martin to pay by December 3, 1879, the original purchase price,

$1,609.75, Brownlee should "take possession as his own property in fee simple forever *under the deed* made him by James S. Cothran, aforesaid," seems to have been an effort on the part of Brownlee to convert the Cothran deed into an absolute deed in fact as well as in appearance. Being intended, when first executed, as a security for the money advanced, it was to remain so until December 3, 1879, when, if the money was not paid him with the interest accrued, it should then become absolute, and a conveyance to him in fee of all the lands described. This court said in the former appeal, *supra,* that such a change could not be made by any subsequent written agreement, unless such subsequent agreement is based upon a sufficient consideration, the burden of showing which is upon the mortgagee; and, further, that it should amount to a sale of the equity of redemption fairly made. His honor below found, as matter of fact, that there was no new consideration for the conditional sale, and this seems to us to end the question.

But even admitting that the conditional sale did change the character of the original deed and put it in condition to become absolute upon failure of Mrs. Martin to comply with its terms, yet his honor further finds, as matter of fact, that the parties settled in full by the arrangement of a sale of the "home place" to Holland for $2,000, which more than paid Brownlee, and Mrs. Martin taking the river place as her own, which arrangement was executed, except a deed of the "river place" had not been made and delivered to Mrs. Martin. Holland, however, had bought and taken possession of the home place, and Mrs. Martin had moved to and had taken entire possession of the "river place."

As to the 5th exception. We do not understand that Mrs. Martin repudiated her third defence (referred to in the exception as the second defence). On the contrary, she asserts that the conditional sale was substantially carried out; that the purpose of that agreement was to secure to Brownlee the sum advanced by him to Judge Cothran, to be paid him on December 3, 1879, and that this purpose was accomplished by the arrangement made of a sale to Holland of the home place at $2,000, which, by agreement, was to be a full settlement. And the Cir-

cuit Judge has found this to be one of the facts in the case after a full hearing and with the witnesses examined in his presence.

Considering the facts found by the Circuit Judge to be the established facts in the case, we think the law applied by him thereto was correct, and the result legitimate and inevitable.

It is the judgment of this court, that the judgment of the Circuit Court be affirmed.

MR. JUSTICE MCIVER concurred.

MR. JUSTICE MCGOWAN, *dissenting.* I cannot concur in this judgment. I think the finding of the Circuit Judge that the original sale and execution of absolute title was intended to be a mortgage was manifestly against the overbearing weight of the evidence, including not only the verdicts of two successive juries upon the very point, but the express declarations of the parties themselves. But as the press of official duties is great, and it would avail nothing, I will do no more than record my dissent.

Judgment affirmed.