### MASON v. FINLEY *ET AL.*

#### (124 S. E., 780)

1. MORTGAGES—DISTINCTION BETWEEN "DEFEASANCE" AND "CONTRACT TO RECONVEY," STATED.—A "defeasance" is distinguished from a "contract to reconvey" in that performance of condition on which defeasance depends annuls deed, while deed is not annulled where grantee has contracted to reconvey, but becomes a link in grantors title on reconveyance to him.

2. PROPERTY—OWNER MAY DISPOSE OF LAND ON SUCH CONDITIONS AS SHE SEES FIT.—Absolute owner may dispose of land upon such conditions as she sees fit.

---

NOTE: On parol evidence that a written instrument which on its face imports a complete transfer of a legal or equitable estate or interest in property was intended to operate as a mortgage or pledge, see note in L. R. A., 1916B, 18.

3. MORTGAGES—CONVEYANCE INTENDED AS SUCH WILL BE UPHELD NOT-WITHSTANDING GRANTEE'S CONTRACT TO RECONVEY.—Where grantor intended to sell and grantee intended to buy, the sale should be upheld, though grantee entered into an agreement to reconvey on certain conditions.

4. MORTGAGES—EVIDENCE HELD TO PROVE THAT DEED ABSOLUTE ON FACE WAS INTENDED AS MORTGAGE.—Evidence *held* to prove that deed absolute on its face, accompanied by grantee's contemporaneous agreement to reconvey on payment of certain sum of money, was intended as mortgage.

5. MORTGAGES—GROSS INADEQUACY OF PRICE STRONGLY PERSUASIVE THAT DEED WAS INTENDED AS MORTGAGE.—Gross inadequacy of price strongly tends to prove absolute deed was intended as mortgage.

Before SEASE, J., Spartanburg, 1923. Reversed and remanded with directions.

Action by Melissa M. Mason against S. G. Finley and W. W. Murph. From judgment dismissing complaint the plaintiff and the last named defendant appeals.

*Messrs. Sanders & Sanders* and *John C. Lanham,* for plaintiff appellant; cite: *Once a mortgage always a mortgage:* 27 Cyc., 974; McM. Eq., 13; 1 Jones Mortgages Sec. 330. *Measure of proof required by plaintiff:* 3 Pom. Sec. 1196p; 3 Rich. Eq., 153; 52 S. C., 524; 55 S .C., 70; 55 S. C., 524; 103 S. C., 253; 54 S. C., 191; 66 S. C., 89. *Deed intended as a mortgage:* 1 Jones Mort. Sec. 266, 272, 273, 275, 278; 10 Cal., 197. *Cases in which deeds have been held to be intended as mortgage:* 1 McM. Eq., 1; 28 S. C., 364; 50 S. C., 169; 55 S. C., 510; 70 S. C., 510; 70 S. C., 65; 92 S. C., 501; 99 S. C., 31; 110 S. C., 161; 12 How., 139; 96 U. S., 332; 90 U. S., 514. *Decisions where the transaction was held to be sale with a contract to repurchase:* 3 Rich. Eq., 153; 27 S. C., 1; 31 S. C., 276; 54 S. C., 184; 55 S. C., 51; 61 S. C., 565; 68 S. C., 185; 90 S. C., 490; 52 S. C., 154; 64 S. C., 179; 100 S. C., 397; 97 S. C., 362; 103 S. C., 253; 110 S. C., 482; 119 S. C., 273; 118 S. E., 308; 70 Cranch., 218.

_Messrs. Perrin & Tinsley,_ for defendant appellant, cite: _When mortgage is by deed absolute in form grantee can convey good title to bona fide purchaser:_ 1 Jones Mort. Sec. 549; 14 S. C., 318; 2 Pom. Eq., 754. _Murph had no notice of infirmity:_ 34 S. C., 516. _Covenants of warranty did not constitute any operative part in the deed:_ 148 U. S., 21. _Holder of quitclaim deed entitled to protection as purchaser for value without notice:_ 34 S. C., 359; 71 S. E., 895.

_Messrs. Phifer & Brice,_ for defendant respondent, cite: _No date and deed will not be construed to be a mortgage:_ 100 S. C., 402. _Sale with agreement to reconvey:_ 55 S. C., 70; 99 S. C., 31. _Presumption that deed is absolute:_ 90 S. C., 490.

October 14, 1924.

The opinion of the Court was delivered by MR. JUSTICE COTHRAN.

This is an action to have the Court declare that a certain deed, absolute on its face, but accompanied by a contemporaneous agreement to reconvey the property to the grantor upon the payment of a certain sum of money at a given time, should be construed as a mortgage, with the incidental right of redemption, and not as it appears on its face, an absolute deed; the condition for a reconveyance not having been performed.

The facts appear to be as follows:

On January 20, 1920, the plaintiff Mrs. Mason, the owner at that time of an undivided one-fourth interest in a tract of land containing 110 acres, worth from $50 to $75 per acre, which had belonged to her deceased father, applied. as she had frequently done before, to the defendant Finley a member of the Spartanburg Bar, for a loan of $100, $6( of which she proposed to apply to past-due notes held b) Mr. Finley, and offered her interest in the land as security for the desired loan. The transaction appears to have been

concluded at once.    Mr. Finley testified that he positively
declined to lend her the money upon a mortgage of the prop-
erty, for the reason that he had had a great deal of trouble
in collecting previous loans from her, and for the further
reason that the value of the property was not sufficient to
secure the loan with the added costs of foreclosure.    It does
not appear that Mrs. Mason desired to make a sale of her
interest, or that Mr. Finley desired to acquire it; she made
no proposition to sell and he made none to buy; the value
of the property was not discussed except with reference to
the security for the money.    Mr. Finley testified that "I
thought it was worth that and a good deal more," and in
answer to the question, "If you hadn't, you wouldn't have
advanced her the money?" he replied, "No, I wouldn't."
No particular reason appears for him to have desired to buy
the land, which he admits that he had never seen except in
passing along the road, or to become a tenant in common
with those who owned the other three-fourths.    The nego-
tiations then promptly culminated in the execution and de-
livery of a deed from Mrs. Mason to Mr. Finley, absolute
in form, conveying her interest in the land in consideration
of the sum of $100.    Contemporaneously, and as a part of
the transaction, Mr. Finley executed and delivered to Mrs
Mason the following instrument of writing:

"State of South Carolina, County of Spartanburg.

"I hereby agree to reconvey to Mrs. Melissa Mason, by
a quitclaim deed, the land which she deeds to me of even
date herewith, provided she pays me $100.00 and 8 per cent.
interest thereon from this date by November 15, 1910, or
any time previous to the above date, but it is expressly un-
derstood that if the payment of the above amount is not
made by November 15th, 1910, that this agreement is null
and void, and that the deed executed by her of even date
herewith is a straight out warranty deed and not a condi-
tional deed or mortgage.

"Witness my hand and seal this the 20th day of January, 1910. S. G. FINLEY."

Mr. Finley exercised no acts of ownership over the interest thus conveyed; the possession continued as before, the place being occupied by Mrs. Mason's mother and she with her husband living there.

On March 8, 1911, Mr. Finley conveyed his interest in the property under the deed aforesaid to the defendant Murph for $350. This deed contained expressions strongly significant of Mr. Finley's fear, at least, that the deed might not be construed as an absolute deed conveying full title to him; expressions in guarded terms, evidently intended to protect him from an adverse construction. "It being the intention and purpose of this deed to convey just what titles I get from Melissa Mason above referred to and no other." The warranty contains this: "just so far as I am able to do under the title passed by the Mason deed aforesaid and not further"—expressions entirely unnecessary, if he had been sure that the transaction would stand the test of a complete and unquestioned sale.

It seems to be assumed that the mother of Mrs. Mason had a life estate in the 110 acres, although that fact does not appear in the record for appeal. If so, her life estate fell in with her death in 1912. In the following year the defendant Murph and one Tinsley, they having acquired the other interests in the land, rented the place to Mrs. Mason's husband, and in the fall of that year, 1913, the Masons moved off, and Murph and Tinsley have had possession ever since, collecting the rents and using it as their property. Some six or eight months after Finley conveyed to Murph, Mrs. Mason, through an attorney, made a feeble demand upon Murph to be allowed to redeem; but nothing came of it, and she took no further steps about the matter until December, 1920, when the present action was commenced, seeking to have the deed declared a mortgage and to be allowed to redeem, alleging that Murph was not a purchaser for value,

but that, if he should be so adjudged, Finley be required to account for the difference between what he received as purchase money from Murph and the amount of the debt, with interest.

The defendant Finley in his answer contends that the collateral agreement was simply an option to repurchase, that he refused to take a mortgage for the reasons above stated, and that the deed had become absolute by failure of the plaintiff to comply with the payment on November 15, 1910.

The case was referred to the Master, who held that Murph was a *bona fide* purchaser and should be protected, but that as between Mrs. Mason and Mr. Finley the transaction was a mortgage, and that he was accountable to her for $433.75, the difference of $250 with interest from November 8, 1911, the approximate date of Mrs. Mason's assertion of her right to redeem the land.

Upon exceptions to the Master's report, his Honor Judge Sease reversed his findings and dismissed the complaint. His decree contains the unnecessary finding (after concluding that the transaction did not constitute a mortgage) that Murph was not a *bona fide* purchaser.

We may at once dispose of Murph's appeal by sustaining the conclusion of the Master as to him, and reversing the Circuit decree holding the contrary. There is no evidence tending to show that Murph had any notice of the collateral agreement.

We may also remark that no point has been made by the respondent, either in the pleadings or in the agreement, of laches on the part of Mrs. Mason, and we have not felt called upon to consider that feature of the case one way or the other.

The main question in the case is whether the transaction detailed constitutes a mortgage or a valid sale with a contract to reconvey upon payment of the $100 with interest on November 15, 1910.

· The question whether a deed absolute upon its face should
be construed a mortgage arises under three conditions:

(1) Where it is not accompanied by a contemporaneously
executed defeasance or contract to reconvey.

(2) Where it is accompanied by a contemporaneously
executed defeasance.

(3) Where it is accompanied by a contemporaneously
executed contract to reconvey.

The distinction between a "defeasance" and a "contract to reconvey" does not appear to have been generally recognized by the authorities upon the subject. They appear both to be treated as defeasances. It is apparent, we think, that there is a marked difference between them. In the one case, the deed is annulled upon the performance of the condition upon which the defeasance depends; it is then as if the deed had never existed. In the other, the deed is not annulled but is recognized as valid, necessarily so in order to support a reconveyance, and becomes a link in the original grantor's title upon a reconveyance to him.

It is not necessary in this case to so declare, and we are not to be understood as doing so, but logically it would appear that where an absolute deed is accompanied by a formal defeasance, contemporaneously executed and as a part of the transaction, as a matter of law, independent of the intention of the parties, the two instruments must be read together, as if the defeasance had been incorporated in the deed, and constitutes a legal mortgage, against which legal construction neither party should be allowed to aver.

In 1 Jones Mtg. (6th Ed.), § 250, it is said:

"When it is once established that the separate instrument is a defeasance, the conveyance assumes the character of a mortgage with the inseparable incident of redemption, which no agreement of the parties that the estate shall be absolute if the money be not paid at the day fixed, can waive. The intent of the parties contrary to the rules of law avails nothing."

In the first class of cases, where the deed absolute on its face is unaccompanied by any collateral agreement, either in the nature of a formal defeasance or of a contract to reconvey, the question whether such deed shall be construed as a mortgage or as an absolute deed depends upon the question of fact whether it was the intention of the parties that it should operate as simply a security for the debt incurred, or as an absolute deed.

And so in the third class of cases, where the deed is accompanied by collateral contemporaneous agreement on the part of the grantee to reconvey the premises to the grantor upon the performance by him of certain conditions named, the same question is alike one of fact.

The case at bar falls within the third class.

There can be no question that the absolute proprietorship of Mrs. Mason, of her interest in the property, vested her with the power to dispose of it by sale; and if by sale, upon such conditions as she and Finley might agree upon. To deny her this right would be to annihilate an essential incident of her title, the power of alienation. If it appears therefore that Mrs. Mason intended to sell and Finley intended to buy, that a willing seller and a willing buyer met and agreed, the sale should be upheld, notwithstanding the fact that Finley entered into an agreement to reconvey upon the conditions named. The vital question, therefore, whether the conveyance was intended as security for a debt, may be resolved more readily by determining whether a *bona fide* sale was contemplated.

There are several circumstances connected with the transaction which force the conclusion that the arrangement consummated was never intended as an actual outright sale, but was adopted as a convenient mode of security and an expeditious means of obtaining a return of the advance made by Finley; and, therefore, should be construed a mortgage.

In the first place, the negotiations between the parties had their inception in an application for a loan, not in a proposal for a sale, agreeably with a custom which, according to Mr. Finley's testimony, had prevailed for eight or ten years, and which was to take care of the plaintiff's existing indebtedness to Mr. Finley and to obtain a further advance in cash, the difference.

It must be conceded that the mere fact that the negotiations between the parties opened with an application for a loan is not conclusive upon the proposition that the deed was intended as security for the anticipated loan; to so hold would deny to the parties the right, after they came together in this initial relation, to change that relation into one of seller and buyer. The point, however, is that having come together in the relation of proposed borrower and lender, it will be presumed that any instruments executed by them thereafter were executed in recognition and furtherance of that relation, in the absence of evidence that such relation was abrogated by the substitution of the new relation of proposed seller and buyer, fairly, understandingly, and unoppressively entered into.

Where an absolute conveyance has been made upon an application for a loan, and an agreement is made to reconvey upon payment of the money advanced, as a general rule the transaction is adjudged to constitute a mortgage. In each (such?) case the purpose of the grantor was in the beginning to borrow money and unless a change be shown in his intentions it is presumed that any use he may have made of his real estate in connection with it was merely as a pledge to secure a loan." 1 Jones, Mtg. (6th Ed.), § 266.

"The parties having originally met upon the footing of borrowing and lending, although a different consideration be recited in the deed, it will be considered a mortgage until it be shown that the parties afterward bargained for the property independently of the loan." 1 Jones, Mtg. (6th Ed.), § 266.

25—S. C. R., 129.

"When a person who appears to be a grantor desired in the inception of the transaction to borrow money and obtains the money, Courts are inclined to say that the parties have made a mortgage, although the transaction may have assumed the form of a sale." 2 Devlin, Deeds, § 1117.

"As the intention of the grantor in the beginning was to borrow money, the presumption is natural, unless an alteration of this intention is shown, that any transfer of his property connected with negotiations for borrowing money was made as security for a loan. And this is true though a different consideration than the one first sought be recited in the deed. The parties having treated as borrower and lender, the conveyance will be considered a mortgage, unless it appears that they afterwards contracted for a sale of the property without reference to the loan. * * * Yet when the transaction had its inception in an application for a loan, the Courts are inclined to scrutinize it closely and to hold it a mortgage, unless it clearly appears that the parties changed their minds afterwards." 3 Dev. Deeds, § 1118; 8 Enc. Evid., 710. *Murray v. Butte-Monitor Co.,* 41 Mont., 449; 110 Pac., 497; 112 Pac., 1133.

As has been stated, the circumstance that the negotiations opened with an application for a loan is not conclusive that a subsequently executed deed was intended as security, but it is a significant circumstance, which combined with other circumstances may develop a positive conclusion to that effect. These circumstances may rebut the inference that a sale outright was intended, and then, by exclusion, support the theory of a mortgage.

In the note to L. R. A., 1916B, at page 307, it is stated that the Courts have adverted to the following circumstances as having a tendency to show that the transactions in question were mortgages:

That there was no evidence that the owner desired to sell or that the lender desired to purchase.

That during the negotiations nothing was said about a sale of the property.

That no price was fixed as the selling value of the property and no discussion along that line was had.

That no attempt was made to ascertain the real value of the property upon which a sale would reasonably be based, greater liberality being exercised when a loan was intended.

That the grantee made no inquiry as to the value of the land.

A deed absolute on its face, for a stated consideration, naturally presumes a prior negotiation for a sale or exchange between the parties, and an agreement upon certain terms; the deed is nothing more than the required legal evidence of the prior agreement. If nothing more appeared, it would be assumed that such prior agreement for a sale had been entered into. But that inquiry is open to a Court of equity, sifting the transaction to the last grain, in an effort to arrive at the truth and justice of the case, and if it should appear that there was never any thought of a sale, but that the deed was executed to secure the return of the advances, the presumption will fade from the case.

The circumstances are overwhelming that no outright sale was ever contemplated by either party. The evidence will be searched in vain for the slighest suggestion that Mrs. Mason ever proposed to sell her interest in her father's estate, or that Mr. Finley had the slightest interest in acquiring it or any idea of bargaining for it.

It is significant that there is no evidence of any trading between the parties as to the price of the land, as is customary in a land trade; no proposition from Mrs. Mason to take so much for it or a counter proposition for Finley to give so much. There was no necessity for such trading if Mrs. Mason wanted to borrow $100 and Finley was willing to lend it to her. The negotiation plainly was consummated upon the basis of Mrs. Mason's borrowing $100 and of

Finley fixing the papers so as to insure return of the $100 with interest, without the costs of foreclosure.

In *Ewart v. Walling,* 42 Ill., 453, one of the considerations relied upon by the Court was thus stated:

"Sales are not usually made in the manner this transaction was consummated. It is believed that the vendor never makes a deed before he negotiates a sale."

In *Beaton v. Wilbur,* 3 N. B. Eq., 309, it was said:

"In all the conversations * * * there is not a word about buying the property—the defendant's stipulation was that he must have an absolute deed. It was the form of the security that he was anxious about—not the nature of the transaction itself. There never was at any time a proposal by the plaintiff to sell his property—he was trying to avoid that—his application was for a loan of money on security by way of mortgage. The loan was never refused; the security by way of an ordinary mortgage was, and a deed absolute on its face stipulated for. This would not, however, alter the real nature of the transaction."

The only negotiation which preceded the execution of the deed was that for a loan; it was not broken by a new negotiation for a sale, and will be presumed to have continued clear through the consummation of the transaction.

In *Fielder v. Darvin,* 50 N. Y., 437, the transaction was held to be a mortgage, for the reason that—

"The application here was for a loan, and all the negotiations were in respect to the form of the security upon the premises in question; and there was no treaty for a purchase by the plaintiff, and no pretense that the defendants would have sold the premises for the sum actually advanced by the plaintiff, or for twice that amount."

We construe Mr. Finley's conduct to be simply this and nothing more: "I will lend you the money but you must give me such security as I prefer, a deed with a contract to reconvey." And this is practically the effect of his testimony. There is not a word in it that suggests a sale, a pur-

pose on the part of either to part with or acquire the land in dispute. The reason he gives for taking a deed is that he would be saved the trouble and costs of a foreclosure proceeding to collect "the amount that she admits she owed me on this land," quoting his words.

It will be noted, a very controlling circumstance, that Mr. Finley did not decline to take a mortgage because he had made or desired to make a contract of sale, or because, after the negotiations opened with an application for a loan, the parties had changed their relation to that of proposed seller and buyer, but because he preferred, for the reasons stated by him, a deed with a contract to reconvey, as the most expeditious and least expensive mode of getting his money back.

Another significant circumstance showing that a sale was not contemplated is the inadequacy of the price which is claimed to have been agreed upon. It is conceded that the 110 acres were worth from $50 to $75 per acre; adopting the lowest estimate, the land was worth $5,500; one-fourth of that would be $1,375; deducting one-third as the value of the mother's life estate, the value of the one-fourth interest would be $916.67, as against the claimed purchase price of $100. This of course, is not a controlling circumstance, for if Mrs. Mason agreed to sell her interest worth $900 for $100, she would have the right to do so; but it is extremely significant upon the issue whether she actually made such an agreement, in view of the common custom of mankind.

In *Crews v. Threadgill,* 35 Ala., 334, the Court held (quoting syllabus as set forth in 35 Century Digest, Mortgages, § 84) :

"An absolute conveyance alleged to be a conditional sale, was held to be a mortgage upon proof that the transaction had its origin in a loan, and that the land was worth nearly twice the amount paid, and that it was agreed that the grantor should remain in possession."

In 1 Jones, Mtg. (6th Ed.) § 275, it is said:

"Inadequacy of price is one of the circumstances which are considered of weight as tending to show that an absolute conveyance accompanied by an agreement to reconvey is a mortgage rather than a conditional sale." *Russel v. Southard*, 12 How., 139; 13 L. Ed., 927.

The vital inquiry is whether the execution of the deed was preceded by an agreement to sell, and the fact of gross inadequacy, from the common experience of mankind, is a strong circumstance against the existence of such an agreement.

We think that Mr. Finley's conduct and consciousness demonstrate that he did not consider the deed as conveying to him the title to the land. It appears that before the maturity of the obligation, that is, before the expiration of the time limit, he made demand upon the plaintiff for the $100 and interest; and that when he made the deed to Murph he carefully protected himself from a possible construction that the transaction was a mortgage, as has been shown above.

The terms of the contract for a reconveyance show that he did not consider that he had an outright deed until after the plaintiff had made default in the payment:

"If the payment of the above amount is not made by November 15th, 1910, that the agrement is null and void, and that the deed executed by her of even date herewith is (will be?) a straight-out warranty deed and not a conditional deed or mortgage."

It is strikingly similar to a provision in the contract construed by the Court in *Brownlee v. Martin*, 28 S. C., 364; 6 S. E., 148, concerning which the Court said:

"It further stipulated that unless this sum was returned to him with interest by the time fixed, that then Brownlee should take possession with an absolute fee-simple title. Why this stipulation if he already had such title under the absolute deed from Judge Cothran? It must have been, because he felt that said deed was not what it appeared to

be on its face, but was merely a mortgage, with the right of redemption on the part of Mrs. Martin."

It has been said that the test in determining whether a mortgage has resulted from such transactions is the continued existence or the extinguishment of the debt. When the case is one of a pre-existing debt, the test is of great value, for if the debt has been extinguished by the deed, there can be, of course, no support for a mortgage. But when the deed is given in exchange for money advanced at the time, and is construed to be a mortgage, the continued existence of the debt is implied. As is held in *Russell v. Southard,* 12 How., 139; 13 L. Ed., 927:

"The memorandum does not contain any promise by Russell to repay the money, and no personal security was taken; but it is settled that this circumstance does not make the conveyance less effectual as a mortgage. * * * And consequently it is not only entirely consistent with the conclusion that a mortgage was intended, but in a case where it was the design of one of the parties to clothe the transaction with the forms of a sale, in order to cut off the right of redemption, it is not to be expected that the party would, by taking personal security, effectually defeat his own attempt to avoid the appearance of a loan."

And so also it has been said, a position strongly relied upon by Mr. Finley in this case, that where the party to whom application has been made for a loan refuses definitely to accept a mortgage and demands a deed, his purpose is indicative of an absolute deed and not a mortgage. We think that this circumstance is entitled to great weight if it appears that the initial relation of proposed borrower and lender had been decisively shattered by the substitution of the new relation of proposed seller and buyer. Although Mrs. Mason may have approached Mr. Finley for a loan, there could be no objection to his refusing to make a loan and opening negotiations for a purchase of the land, which if consummated should be sustained. That is what was

approved in the case of *Williams v. McManus,* 90 S. C.,
490; 73 S. E., 1038. There the negotiations began in
the application for a loan upon the lot as security. This
application was repeated upon several occasions, and each
time the defendant refused to make a loan upon mortgage.
Finally, the defendant offered to buy the lot from the plain-
tiff, and they agreed upon a price which at that time was the
full value of the lot. The plaintiff then executed a deed
absolute on its face, and the defendant gave the plaintiff a
bond for title, agreeing to reconvey upon the payment of
certain sums at stipulated dates. The plaintiff failed to
comply and brought suit to have the transaction declared a
mortgage. The Court held that the new relation of pro-
posed buyer and seller having intervened, a sale was con-
summated, and it was sustained. To the same effect are
*McHall v. Hall,* 41 S. C., 168; 19 S. E., 307. *Brown v.
Bank,* 55 S. C., 51; 32 S. E., 816.

But it is a principle of general application that if the re-
fusal to accept a mortgage was "colorable and a mere con-
trivance to defeat the redeemable qualities of a mortgage, it
should be disregarded, as a fraud upon the law." *Flagg v.
Mann.,* 15 Pick. (Mass.), 467.

"The character of the transaction is clearly indicated
where the evidence shows that after a mortgage had been
refused, the applicant for a loan accepted a counter proposi-
tion with regard to an absolute transfer of the property,
and that the contract was drawn and executed in accordance
with the understanding thus arrived at." Note L. R. A.,
1916B, 313.

In *Hall v. Hall,* 41 S. C., 163; 19 S. E., 305; 44 Am. St.
Rep., 696, the Court said:

"But the Court of equity scrutinizes transactions of that
character very narrowly, and, to be sustained, it must ap-
pear that the dealing stands disconnected from the original
mortgage contract; and, moreover, that it is in all respects
fair, and most especially in a case where the party at dis-

advantage, the mortgagor, is a very old, feeble, and illiterate lady."

We think that the same rule should apply in reference to a change in the original attitude of the parties to each other.

In *Sears v. Dixon,* 33 Cal., 326, the effect of a finding that when the grantor applied to the grantee for a loan upon his homestead property, the grantee, being advised by his lawyer that a mortgage on that property would be ineffectual to secure the payment of the money, refused to lend upon such a security, was thus discussed:

"This, it is insisted, shows that the parties did not intend that the property should be mortgaged to secure the repayment of the money. It is apparent that they did not intend that a mortgage *eo nomine* should be executed. Woodham was unwilling to accept, as his security, a lien in that form. But does not the transaction show that he was willing to accept, and did take a conveyance of the legal title as his security?"

In *Mears v. Strobach,* 12 Wash., 61; 40 Pac., 621, referring to the refusal of the grantee to make a loan, the Court remarked:

"This testimony, interpreted in the light of the instruments actually executed, and of the other facts sufficiently proven by the evidence, fails to satisfy us that the transaction was not after all substantially one of lending and borrowing. In our opinion, there was no intention on the part of either of the parties to do more than, on the one part, to secure the loan of the money, and, n the other, to loan it and get proper security for repayment with interest. This being so, the bare fact that they refused to loan the money and take a mortgage only tends to show that they thought they could evade the law requiring the mortgage to be foreclosed before they could get possession of the property, by taking a deed as they did, and giving a lease and an option to purchase to the grantors named in the deed."

In an exceedingly elaborate and valuable note in L. R. A., 1916B, at page 307, the annotator says:

"The fact that, after the negotiations had settled that a loan was to be made, the owner of the property did not execute a mortgage, is not infrequently accounted for by specific evidence of certain reasons which induced the parties to embody the transaction in an instrument absolute on its face. Thus, an instrument of this description may be preferred because regard was had to the contingency that the equity of redemption might be attacked by the creditors of the transferrer if the transaction appeared on record as a mortgage; or because the transferee desired to avoid being put to the expense of foreclosure proceedings; or because the property in question could not have been insured if it had been subject to a formal mortgage."

In *Couts v. Winston,* 153 Cal., 686; 96 Pac., 357, a very pertinent observation was made by the Court:

"Mrs. Winston had theretofore had unpleasant relations with a sister, from whom she had taken a mortgage which she had been compelled to foreclose. She was particularly desirous of avoiding foreclosure proceedings. Under these circumstances, it was not unreasonable for the trial Court to conclude that the defendants agreed to lend Couts the money upon the security of his land, and attempted to put the transaction in such form that no foreclosure would ever become necessary. Cout's promise to give the Winstons a quit-claim deed if he did not have the money does not conflict with the theory of a loan secured by mortgage. It was merely an additional assurance to the defendants that they would not have to resort to a foreclosure to bar the plaintiff's title."

It appears conclusively, we think, that this was exactly the reason why Mr. Finley preferred a deed to a mortgage. He says in his testimony that Mrs. Mason was a poor woman, and that he had no idea that she would be able to pay back the money, and that if a mortgage should be taken a foreclosure was inevitable. For that reason, to save the costs

of foreclosure, not because he had bought the land, he pre-
ferred to take a deed and give back the contract to reconvey.
According to his own statement then, he arranged to acquire
the land for $100, without there having been the semblance
of a contract to sell and buy at that or any other price.

It appears that the plaintiff at the time of the transaction
owed Mr. Finley some $60 secured by chattel mortgages;
that only $40 in cash was paid to her. It does not appear
that the evidence of the past-due obligations were surren-
dered for cancellation which naturally would have occurred
if a sale had been intended.

The Courts have always recognized and appreciated the
fact that the necessities and hopefulness of the hard-pressed
"moneyless man" presents a double condition, which in his
eagerness to relieve present embarrassment weakens his
power of resistance against imposition and unconscionable
agreements, of which the other party is too often ready to
take advantage; and will scrutinize the transaction for proof
that he has fairly parted with his "birthright." If there
had been a Court of equity in the days of Isaae, the notorious
bargain between Jacob and Esau would never have been
sustained.

If this transaction should be sustained as a sale with a con-
tract to reconvey, and not a mortgage, the stationer's stock
of mortgage blanks may as well be destroyed, for there will
be no use for them and the usury laws may as well be re-
pealed; hundreds of homes will find new owners.

It is a disagreeable duty to decide this case upon grounds
which seemingly reflect upon a most reputable attorney, and
in doing so we may be permitted to say that no such inten-
tion is entertained by the Court. His reputation and charac-
ter are both well known to the members of this Court, and
should not suffer in the decision of a matter of law as to
which he was entitled to exercise his judgment, and possibly
may be right and the Court in error. We do not think so
and feel bound to so declare the law, as a matter of public

policy, in the protection of that class whose necessities often have placed them in positions which afford them no freedom of action. We feel that in such decision the lender has not materially suffered except in the loss of anticipated or obtained profits; he has received his own with interest.

As a matter of interest and convenience in the future, we append a list of cases heretofore decided by this Court upon the interesting question, which has given rise to possibly more decisions than any other, calling particular attention to the elaborate note found in L. R. A., 1916B and extending nearly 600 pages. *Walling v. Aiken,* McMul. Eq., 1 (mortgage). *Arnold v. Mattison,* 3 Rich. Eq., 153 (deed). *Nesbitt v. Cavender,* 27 S. C., 1; 2 S. E., 702 (deed). *Brownlee v. Martin,* 28 S. C., 364; 6 S. E., 148 (mortgage). *Hodge v. Weeks,* 31 S. C., 276; 9 S. E., 953 (deed). *Tant v. Guess,* 37 S. C., 489; 16 S. E., 472 (mortgage). *Hall v. Hall,* 41 S. C., 163; 19 S. E., 305; 44 Am. St. Rep., 696 (mortgage). *McHall v. Hall,* 41 S. C., 168; 19 S. E., 307 (deed). *Campbell v. Linder,* 50 S. C., 169; 27 S. E., 648 (mortgage). *Petty v. Petty,* 52 S. C., 54; 29 S. E., 406 (deed). *Shiver v. Arthur,* 54 S. C., 184; 32 S. E., 310 (deed). *Brown v. Bank,* 55 S. C., 51; 32 S. E., 816 (deed). *Brickle v. Leach,* 55 S. C., 510; 33 S. E., 720 (mortgage). *Creswell v. Smith,* 61 S. C., 575; 39 S. E., 757 (deed). *Miller v. Prince,* 66 S. C., 85; 44 S. E., 584 (deed). *McGill v. Thorne,* 70 S. C., 65; 48 S. E., 994 (mortgage). *Francis v. Francis,* 78 S. C., 178; 58 S. E., 804 (mortgage). *Lewis v. Cooley,* 81 S. C., 461; 62 S. E., 868 (deed). *Ray v. Counts,* 82 S. C., 555; 64 S. E., 1135 (deed). *Hutchinson v. Turner,* 88 S. C., 318; 70 S. E., 410; 806 (deed). *Williams v. McManus,* 90 S. C., 490; 73 S. E., 1038 (deed). *Leland v. Morrison,* 92 S. C., 501; 75 S. E., 889, Ann Cas., 1914B, 349 (mortgage). *Dinkins v. Simons,* 97 S. C., 261; 81 S. E., 638 (mortgage). *Banks v. Frith,* 97 S. C., 362; 81 S. E., 677 (deed). *Hamilton v. Hamer,* 99 S. C., 64; 82 S. E., 997 (mortgage).

*Bryan v. Boyd,* 100 S. C., 397; 84 S. E., 992 (deed). *Rush v. Green,* 103 S. C., 251; 87 S. E., 1009 (deed). *Stackhouse v. Conerly,* 110 S. C., 161; 96 S. E., 255 (mortgage). *Bank v. Barnes,* 116 S. C., 442; 107 S. E., 918 (mortgage). *Brockington v. Lynch,* 119 S. C., 279; 112 S. E., 94 (deed). *Reid v. Gambill* (S. C.), 118 S. E., 308 (deed).

It will be observed that in the case of *Francis v. Francis,* 78 S. C., 178; 58 S. E., 804, the Court practically holds that the mere fact that a contract to reconvey was executed simultaneously with the deed creates in legal effect a mortgage. We are not disposed to follow that case to such extent, but think, as was held in the case of *Stackhouse v. Conerly,* 110 S. C., 161; 96 S. E., 255, that it is a strong circumstance to be considered.

The judgment of this Court is that the judgment of the Circuit Court be reversed, and that the case be remanded to that Court for the purpose of carrying into effect the recommendations contained in the Master's report which is confirmed.

MESSRS. JUSTICES WATTS and FRASER concur.

MR. JUSTICE MARION dissents.

MR. CHIEF JUSTICE GARY did not participate.